CASE NO.  23-15043

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

TOMAS PEREZ, Plaintiff-Appellant

v.

BARRICK GOLDSTRIKE MINES, INC., Defendant-Appellees

---

On Appeal from the United States District Court for the District of Nevada
Case No. 3:19-cv-00067-RCJ-CSD Honorable Robert C. Jones

## **APPELLANT'S OPENING BRIEF**

James P. Kemp, Esq.
Nevada Bar No. 6375
KEMP & KEMP
7435 West Azure Drive, Suite110
Las Vegas, NV  89130
(702) 258-1183
Attorney for Appellant

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES...…………...…………………………………......iv

JURISDICTIONAL STATEMENT…………………………………….…..... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW…………… 1

STATEMENT OF THE CASE……...………………………………….. 3

    **I.** <u>**PROCEDURAL HISTORY**</u>…………….….………………...…3

    **II.** <u>**STATEMENT OF FACTS**</u>…………………………………….4

      **A. Background**…………………………………………………4

      **B. The Jury Verdict**………………………………………………9

SUMMARY OF THE ARGUMENT………………………………………… 10

ARGUMENT…………………………………………………………… 12

    **I.** <u>**STANDARD OF REVIEW**</u>……………………………………….. 12

      **A. The Court Reviews the Jury Verdict for Lack of Substantial Evidence or Plain Error**.…………………………….…………12

      **B. The Court Reviews the Jury Verdict for Lack of Substantial Evidence or Plain Error**.…………..………………………14

    **II.** <u>**THE JURY VERDICT AS TO THE FMLA INTERFERENCE CLAIM IS PLAIN ERROR AND/OR NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**</u>……………………………..…16

    **III.** <u>**THE JUDGMENT IN THIS CASE SHOULD BE REVERSED BASED ON A FIRST IMPRESSION ERROR OF LAW.**</u>…………19

    **IV.** <u>**THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN REFUSING PLAINTIFF-APPELLANT'S PROPOSED JURY INSTRUCTIONS**</u>………………………………………………30

CONCLUSION……………………………………………………….. 30

CERTIFICATE OF COMPLIANCE………………………………………. 44

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Int'l Vacations v. MacBride*, 99 Nev. 324, 661 P.2d 1301 (1983); .........36

*Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1122-23 (9th Cir. 2001) ...............................................................................................................................39

*Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 252 (3d Cir. 2014) .............17

*Dep't Hum. Res. v. Hibbs*, 538 U.S. 721, 737-38 (2003) .......................................30

*EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir. 2009).............12

*Escriba v. Foster Poultry Farms, Inc.,* 743 F.3d 1236, 1243 (9th Cir. 2014) .........17

*Gambini v. Total Renal Care, Inc*., 486 F.3d 1087 (9th Cir. 2007) .......................15

*Hanson v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984) .......................................34

*In re Asbestos Cases*, 847 F.2d 523, 524 (9th Cir.1988) ........................................12

*Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 184 P.3d 378 (2008). ......36

*Liu v. Amway Corp*., 347 F.3d 1125 (9th Cir. 2003) ...............................................39

*Lonicki v. Sutter Health Cent*., 180 P.3d 321, 74 Cal. Rptr. 3d 570, 585-590, 43 Cal. 4th 201 (2008) ..............................................................................................28

*Miller v. A T & T*, 60 F.Supp.2d 574, 580 (S.D.W.Va.1999) .................................28

*Mosesian v. Peat, Marwick, Mitchell & Co*., 727 F.2d 873, 877 (9th Cir.) ...........13

*Pollock v. Koehring Co*., 540 F.2d 425, 426 (9th Cir.1976) ..................................12

*Rhoads v. FDIC*, 257 F.3d 373, 386 (4th Cir. 2001) ..............................................28

*Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011) ..............................15

*Sims v. Alameda-Contra Costa Transit Dist.,* 2 F. Supp. 2d 1253, 1260 (N.D. Cal. 1998) ....................................................................................................................25

*St. Elizabeth Community Hosp. v. Heckler*, 745 F.2d 587, 592 (9th Cir.1984). .....13

*State Indus. Ins. Sys. v. Buckley*, 100 Nev. 376, at 380, 682 P.2d 1387 (1984) ......36

*Transgo, Inc. v. Ajac Transmission Parts Corp*., 768 F.2d 1001, 1013-14 (9th Cir.1985),....................................................................................................................13

*Walker v. KFC Corp*., 728 F.2d 1215, 1223 (9th Cir.1984)....................................13

*Wheeler v. Pioneer Developmental Services, Inc*., 249 F.Supp.2d 158, 167 (D.Mass 2004) ....................................................................................................................28

*Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014).......................................15

**Statutes**

28 U.S.C. §1291 ......................................................................................................1

28 U.S.C. §1331 ......................................................................................................1

28 U.S.C. § 1441 .....................................................................................................1

29 U.S.C. § 2601 .....................................................................................................1

29 U.S.C. § 2613 ............................................................................................. passim

31 U.S.C. § 3730(h). ..................................................................................1
42 U.S.C. § 12101 .....................................................................................1
NRS 613.160 ....................................................................................... 15, 37
NRS 616A.030 .........................................................................................35
NRS 616A.265 .........................................................................................36
NRS 616B.609 ................................................................................ 16, 34, 35
NRS 616C.015(1) .....................................................................................32
NRS 616C.140(1) ................................................................................ 30, 41

**Rules**

FRAP 3 .......................................................................................................1
FRAP 4(a), ..................................................................................................1

**Regulations**

29 C.F.R. § 825.220 ................................................................................39
29 C.F.R. § 825.307 ................................................................................41
29 C.F.R. § 825.308 ................................................................................40
29 CFR § 825.113 ........................................................................... 14, 18, 22
29 CFR § 825.307 ...................................................................................27

## JURISDICTIONAL STATEMENT

The District Court had original jurisdiction over this case pursuant to 28 U.S.C. §1331 in that it arose under the Constitution, laws, or treaties of the United States, specifically the Family and Medical Leave Act of 1993 (FMLA), at 29 U.S.C. § 2601 *et seq.* The District Court also had supplemental jurisdiction pursuant to 28 U.S.C. § 1441 over related state claims brought under Nevada Common Law for wrongful termination in violation of public policy.

This appeal is from a final Judgment entered by the District Court December 15, 2022 (ECF No. 115; ER-004) on a jury verdict (ECF No. 110; ER-005-007) after trial that disposed of all claims. Also on appeal are oral orders regarding jury instructions made on November 11, 2022. (ER-051-146) The Notice of Appeal was timely filed, in accordance with FRAP 4(a), on January 11, 2023. (ECF No. 117; ER-262-264) The Court of Appeals has jurisdiction over the appeal pursuant to 28 U.S.C. §1291 and FRAP 3.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the Jury Verdict (ECF No. 110; ER-005-007) is clearly erroneous under the law and the jury instructions, internally inconsistent, against the manifest weight of the evidence and not supported by any evidence in its answering no to the verdict form's first question of "Has Tomas shown by a preponderance of the evidence that he suffered a serious health condition that

1

prevented him from performing his job?" where the undisputed and uncontroverted evidence is that on November 1, 2017 Plaintiff Tomas Perez ("Tomas") was certified by Dr. Brent Black (M.D.) to be off of his job for more than three consecutive calendar days, with follow up appointments and care scheduled and taking place thereafter, due to his having a contusion with muscle spasms in his chest wall for which he was taking medications that would make driving a 26-ton haul truck in tunnels in Defendant-Appellee's underground mine unsafe.

2. Whether an employer, such as Defendant-Appellee in this case, can as a matter of law successfully challenge an employee's certification of need for a single block period of leave (not intermittent) without producing competent contrary medical evidence and without having followed the FMLA and U.S. Department of Labor regulations regarding an employer's challenge to the employee's doctor's certification such as by demanding recertification or obtaining a second or third medical opinion under 29 U.S.C. § 2613 (c)(d) and (e). In other words, is the employer's subjective view of and reliance upon other non-medical information sufficient to defeat the certification of a medical doctor and permit the employer to legally deny substantive rights under the remedial statutory FMLA scheme?

3. Whether the District Court erred as a matter of law or abused its discretion in refusing Plaintiff-Appellant's requests to give jury instructions related to legal requirements and employer options under the FMLA, and instructions setting forth controlling law governing employee rights and employer responsibilities under Nevada workers' compensation laws that could have materially changed the jury's verdict and outcome of not only the Nevada common law wrongful termination claim, but indeed the entire case.

## STATEMENT OF THE CASE

### I.    PROCEDURAL HISTORY

This case was tried to a jury from November 7 through November 11, 2022.[1] The jury rendered a verdict in favor of the Defendant-Appellee Barrick Goldstrike Mines, Inc..  On December 15, 2022 the District Court entered judgment on the verdict.  (ECF No. 115; ER-004)

Plaintiff-Appellant timely appealed the Judgment entered on December 15, 2022 when he filed his Notice of Appeal on January 11, 2023. (ECF No. 111; ER-262-264)

Tomas seeks reversal by the Court of Appeals and remand back to the District Court with instructions as to the correct law to be applied and for a new

---

[1] The District Court required the courthouse in Reno to be open on the Veterans Day holiday (a Friday in 2022) and intended to require the jury to deliberate through Saturday November 12 if they had not reached a verdict.

3

trial on the whole case.

## II. STATEMENT OF FACTS

### A. Background.

As is true with most employment cases, this one is fact intensive. Only the facts necessary for background and to understand the issues on appeal will be provided now, reserving the right to address in reply any additional facts that the Defendant-Appellee may adduce.

Tomas Perez was employed by Defendant-Appellee Barrick Goldstrike Mines, Inc. and worked as a haul truck driver in an underground goldmine in the mining district known as "the Carlin Trend" in northeast Nevada in the vicinity of the city of Elko where Tomas and many of his coworkers live.

The genesis of this case is Tomas's claim that in the early morning hours of November 1, 2017 the underground haul truck that he was driving through tunnels thousands of feet below the earth's surface struck the wall of the mine (also called the "rib" of the mine) when he swerved to avoid running over a rock in the roadway. (ER-154, 195) Hitting the wall of the mine is a common occurrence and the haul trucks bear the scars of many such encounters in the narrow tunnels of the mine. (ER-177-196)

When the truck hit the wall Tomas's chest wall was thrust into the armrest of the driver's seat. (ER-154, 195, 161-165, 167-170) It knocked the wind out of him

briefly, but he felt no immediate pain. (Id.) He exited the truck, picked up the rock off the roadway and threw it in the dump truck bed, and then checked the truck and the wall for any damage. He found no damage. There was testimony that the policy and procedure as generally followed was that if there was no injury noted and no damage to the mine wall or the haul truck, then that matter did not have to be reported, essentially there was nothing to report—no injury, no damage. Thus, Tomas just went back to work and hauled a small number of more loads before his quitting time.

When Tomas' shift was over, he rode the elevator to the surface from the underground mining operation. Tomas testified that when he got to the surface the air on that early November day was much colder than it was in the underground mine and when the cold air hit him his chest tightened up and started to hurt. He reported this pain to Eloy Diaz, a member of the Mine Safety team, who was a proper person to report an injury to. At this point Tomas realized that he had hurt himself in some way when the haul truck struck the wall of the mine. Tomas did not feel any pain and was not cognizable that he had actually been injured until the point at which he was going up to the surface on the elevator ("cage").

After reaching the surface the miners, including Tomas, have to get on buses to be taken back to a locker room area where they clean up and change clothes before boarding another bus to be taken back to Elko.

Upon telling Eloy Diaz that he had hurt himself and had pain in the side of his chest, where it had struck the armrest of the driver's seat, Eloy escorted Tomas to the first-aid room.[2]  At the first-aid room Tomas was looked at by the EMTs there including Nikkayla Simon.  Tomas did not feel as though he needed an ambulance, but did ask to be taken to town to see a doctor at the clinic.  So his chest was wrapped in a bandage and after filling out a workers' compensation C-1 form (ER-154) that is written notice of the accident and injury to the employer, Tomas was taken to town to the medical clinic that was 100% funded by Defendant-Appellee, Barrick Goldstrike Mines, Inc.

At the medical clinic Tomas was examined by Dr. Brent Black.  Dr. Black diagnosed a chest wall contusion. (ER-161-165, 167-170, 195) During the course of his treatment of Tomas he also diagnosed him with muscle spasms in the chest wall and noted that there were fasciculations which is muscle twitching. (Id.; ER-230-233-testimony Dr. Black) It is indisputable medical fact that muscle spasm and fasciculations are involuntary conditions that cannot be faked by a human being. (ER-230-233) Dr. Black, as a physician who frequently treated occupational injuries of mine employees at a clinic fully funded by a mining company, was familiar with the conditions underground and the requirements of the job of a haul

---

[2] There are more facts involved with the process of getting Tomas to the first-aid room including a mechanic named Jesse Gonzalez's refusal to take Eloy and Tomas right away and their having to get on a different bus, but those facts are not particularly critical to the issues in this appeal.

truck driver, like Tomas. (ER-205-206) Dr. Black issued a certification that Tomas was to remain off work pending a follow-up doctor appointment on November 6, 2017. (ER-161 and ER-195) It is undisputed that the employer, who actually had a workers' compensation employee representative named Beverly Grover present at the Clinic when Tomas was examined by Dr. Black (ER-166, 171-173, 175-176), had proper notice and certification of the injury and need for leave under the FMLA. (ER-130-131) It is likewise undisputed that there is no medical evidence whatsoever to contradict the findings, diagnosis, and orders of Dr. Black. None.

When Tomas returned to Dr. Black on November 6, 2017. Dr. Black put Tomas on Flexeril, a muscle relaxer used to treat muscle spasm and Dr. Black continued to have Tomas certified as being off work. (ER-167-170) He should definitely not be driving a large 26-ton haul truck underground while on Flexeril; he would be a risk to himself and others if he did that. (ER-223-224, 233, 238-239) Dr. Black did not want him being bounced around on the bumpy roads underground either and so he kept Tomas out of work for another week. (Id.) At the next follow up doctor appointment on November 16, 2017 Dr. Black approved Tomas to return to work full duty on November 19, 2017. (ER-174)

Instead of being returned to work and restored to his position, Tomas was fired from his job. (ER-194) Defendant-Appellee had its workers' compensation administrator hire a private investigator to follow Tomas around and videorecord

7

his activities. On November 9, 2017—which was nine days after he was first diagnosed and taken off work by Dr. Black, and three days after he started taking the Flexeril muscle relaxant medication—Tomas spent a short period of time at a property he owns doing some light handyman repairs and some of this activity was recorded by the investigator.[3] This video recording was never shown to Tomas so he was never given a chance to explain it or put it in context and the video recording was never shown to Dr. Black to see if the doctor would recertify Tomas as being able to return to work at an earlier time. The video recording was never shown to any other doctor for another medical opinion, either. Defendant-Appellee merely concluded on its own without further consideration or investigation that Tomas had somehow faked his injury (despite involuntary muscle spasm and fasciculation symptoms that cannot be faked) and had fraudulently taken FMLA leave. No second opinion from a doctor chosen by the employer, no third opinion from a doctor chosen by the employee, no request to get recertification from Dr. Black. Tomas was just fired and not restored to his position.

Defendant-Appellee also claimed to have fired Tomas because he did not "immediately" report his injury. Tomas did report his injury to a supervisor and filled out a C-1 notice of injury workers' compensation form on the morning of

---

[3] Dr. Black did not want him in bed and did want him to be up and moving around. (ER-236-237)

November 1, 2017 within 2-3 hours of when he bumped into the wall with the truck and immediately upon realizing that he was actually injured when he reached the surface and his muscles spasmed on him. (ER-154)

This lawsuit was filed and after dispositive motion practice the case proceeded to trial on November 7, 2022 (the case was delayed by the COVID-19 pandemic), five years after the events took place.

**B. The Jury Verdict.**

As noted above, this case went to a jury trial from November 7 through November 11, 2022. Two claims were presented to the jury, 1) FMLA Interference, and 2) Nevada common law wrongful discharge in violation of public policy for Tomas' pursuit of workers' compensation benefits under the Nevada Industrial Insurance Act. The Jury Verdict Form is at ER-005-007. The jury checked the answer **"No"** to the following questions:

> "Has Tomas shown by a preponderance of the evidence that he suffered a serious health condition that prevented him from performing his job?"

and

> "Has Tomas shown by a preponderance of the evidence that Barrick terminated his employment because he filed a workers' compensation claim?"

(Id.)

Based on the structure and the instructions of the Jury Verdict Form, no other questions on the form were answered. (Id.) This verdict, therefore, was for the Defendant-Appellee and against the Plaintiff-Appellant.

Subsequently, on December 15, 2022 the District Court entered judgment on the jury verdict. (ECF No. 115; 1-ER-004) On January 11, 2023 the Notice of Appeal was filed in the District Court. (ER-262-264)

## SUMMARY OF THE ARGUMENT

This Court should reverse the judgment and remand the case for the trial court for a new trial on the entire case with instructions to provide the jury instructions requested by Plaintiff-Appellant regarding the legal requirement of the FMLA and Nevada workers' compensation law.

First, the jury's verdict is plain error and unsupported by substantial evidence, especially as to its answer of "No" to Question 1 regarding whether Tomas had a serious health condition for purposes of the FMLA. Tomas was certified by his doctor as having a chest wall contusion, and subsequently diagnosed with muscle spam and fasciculations (conditions that cannot be faked). He was noted to have about half of what his doctor considered normal lung capacity on testing. And he was prescribed muscle relaxer medication that the use of precluded him from driving a 26-ton haul truck on the narrow and bumpy roads in underground mine tunnels. Dr. Black took Tomas off work for a total of 19 days from November 1 through November 19, 2017. That is more than the three consecutive calendar days provided for in the statute and regulation. Tomas did have follow up care two times between November 1 and November 19. The facts

literally meet the definition and it is clear that the jury failed to follow Jury Instruction No. 13 (ER_022)  This alone is sufficient for reversal and remand for a new trial.

Second, there is an issue of first impression in this Circuit.  That is whether or not an employer can defeat an employee's sufficient certification of serious health condition without providing competent contrary medical evidence to refute what the employee's doctor has opined.  There are statutes and regulations that provide a scheme and tools for employers to ferret out any false and fraudulent claims of entitlements under the FMLA.  The employer can request re-certification and the employer can get a second opinion from a doctor of its choice and even a third opinion if the employee's doctor and the employer's second opinion doctor reporting results in a "tie."  Plaintiff-Appellant argues that while the statutes use the permissive word "may," that the consequences of not utilizing the tools given in the FMLA to challenge an employee's certification must be that the employer is unable to defeat the employee's "sufficient certification."  Essentially, a doctor's medical opinion and conclusions should only be able to be challenged with contrary competent medical evidence.  Because Barrick does not have such evidence here it must fail to defeat Tomas Perez's proof that he had a serious health condition entitling him to the benefits of the FMLA.

11

Finally, there are numerous jury instructions that Plaintiff-Appellant proposed and the District Court refused to give. The result is that the jury was not fully, fairly, and completely instructed on the law and this resulted in prejudicial error which, under the applicable standards, requires reversal and remand for a new trial. This is for both the FMLA interference claim and for the Nevada common law wrongful discharge claim.

Therefore, the court should reverse and remand the case for trial.

## **ARGUMENT**

### I. **STANDARD OF REVIEW.**

In evaluating jury instructions, "prejudicial error results when, 'looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered.'" *In re Asbestos Cases*, 847 F.2d 523, 524 (9th Cir.1988) (citing *Pollock v. Koehring Co*., 540 F.2d 425, 426 (9th Cir.1976)).

#### **A. The Court Reviews the Jury Verdict for Lack of Substantial Evidence or Plain Error.**

The jury's verdict should be overturned if it amounts to plain error or there is a lack of substantial evidence to support the verdict. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir. 2009). The verdict obviously should not stand if it amounts to an error of law. Also, the verdict should not be affirmed (i.e. should be reversed) if there is a lack of substantial evidence to support the

verdict. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1013-14 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986), Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence. *St. Elizabeth Community Hosp. v. Heckler*, 745 F.2d 587, 592 (9th Cir.1984). The court is not to weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists. *Transgo*, 768 F.2d at 1024; *Walker v. KFC Corp.*, 728 F.2d 1215, 1223 (9th Cir.1984); *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir.), *cert. denied*, 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984).

In this case there is no substantial evidence to support the verdict insofar as the jury made a finding that Tomas did **not** have a serious health condition that prevented him from doing his job. This goes to the heart of an FMLA interference claim and if the jury got this issue wrong, which it plainly did, then there is really no alternative to throwing out the verdict and retrying the case. The only competent medical evidence is that Dr. Black diagnosed Tomas with muscle spasm and fasciculations that cannot be faked, he placed Tomas on prescription muscle relaxant (Flexeril) that made it unsafe for him to drive a haul truck in an underground mine, and Dr. Black took Tomas off work for more than three consecutive calendar days and treated him at Dr. Black's clinic office three times

within less than 30 days. This is the very definition of a serious health condition under 29 CFR § 825.113 and .115. The jury simply could not reach the verdict that it did based upon the uncontroverted medical evidence. Reversal is required.

### B. The Court Reviews Jury Instructions for Prejudicial Error in Whether Particular Instructions Were not Given or if the Instructions Given do not Fairly and Correctly Cover the Law.

This case involves the prejudicial error in the court not giving jury instructions that Plaintiff-Appellant proposed and requested to be given by the court. Accordingly, the following standards apply to this issue:

> Where a challenge to jury instructions is at issue, prejudicial error results *when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered.* Where an error is merely harmless, reversal is not required. We review a district court's formulation of civil jury instructions for an abuse of discretion, and we review de novo whether a jury instruction misstates the law. Here analysis reveals that the trial court committed reversible error when it refused to give Gambini's Prop. Instr. 26 because it failed "fairly and adequately" to cover the issues presented and to state the law correctly, and because it was ultimately misleading. …
>
> **An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless.** While this standard of review is less stringent than review for harmless error in a criminal case, it is more stringent than review for sufficiency of the evidence in which we view the evidence in the light most favorable to the prevailing party. **In reviewing a civil jury instruction for harmless error, the prevailing party is not entitled to have disputed factual questions resolved in his favor because the jury's verdict may have resulted from a misapprehension of law rather than from factual determinations in favor of the prevailing party.** That yardstick will be applied in our review of the actual and proposed jury instructions at issue on this appeal.

*Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087 (9th Cir. 2007) (Cleaned up and emphasis added)

With respect to harmless error, this court does not reverse if any error relating to the jury instructions was harmless. *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014). "Harmless error review for a civil jury trial . . . shifts [the burden] to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." Id. (alterations in original) (citation omitted). Prejudice is more likely than not if there is nothing about the jury's verdict to indicate the result would be the same absent the error. *Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011)

In this case, the District Court committed legal error in failing to give a number of jury instructions requested by Plaintiff-Appellant. These, among others, related to the proper application of the law with respect to an employer's ability to challenge a medical certification from Tomas's doctor, the jury's duty to disregard any claim of good faith by Barrick, the legal rights of Tomas with respect to the amount of time he has under the law to report his injury, the Nevada workers' compensation law that prohibits an employer from creating contracts or "devices" that purport to waive or diminish an employee's rights under the Nevada Industrial Insurance Act, and Tomas's right to be confronted and have a hearing before being fired based on a detective's report under NRS 613.160. The legal error was not

harmless because if the jury had been properly instructed on these issues it could very well have changed the outcome of the trial and a different verdict may have been arrived at. The jury was not fairly and correctly instructed as to the complete context of the law and without the proper context the instructions as a whole are misleading and incorrect.

For just one example, Plaintiff-Appellant requested instructions that Tomas had a legal right to report the injury to his employer within seven days under NRS 616C.015 and that an employer's policy that requires or permits termination of an employee's employment is an impediment to that right and is void under NRS 616B.609. The District Court refused to give these instructions which improperly suggested to the jury that firing Tomas because he reported his injury (which he did not at first appreciate that he had) two or three hours after the truck bumped the wall of the mine was okay under the law. The jury was not informed that Tomas legally had up to SEVEN DAYS to report his injury. If the jury was given the refused instruction it may have inferred that Barrick's actions in terminating Tomas's employment were retaliatory for filing his workers' compensation claim.

## II. THE JURY VERDICT AS TO THE FMLA INTERFERENCE CLAIM IS PLAIN ERROR AND/OR NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The jury's finding is plain error and not supported by substantial evidence at all. The jury only answered one question with respect to the FMLA Interference

claim and that answer was in plain error and not supported by substantial evidence.

That question was as follows:

> "Has Tomas shown by a preponderance of the evidence that he suffered a serious health condition that prevented him from performing his job?"

(ER-005) The jury answered "No" to this question. This was error and this court should reverse and remand the case for a new trial with instructions to the District Court to either rule on the issue as a matter of law or to instruct the jury more fully that it must determine that Tomas **did have a serious health condition** under the FMLA based on the undisputed medical evidence in the case.

> "To make out a prima facie case of FMLA interference, an employee must establish that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."

*Escriba v. Foster Poultry Farms, Inc.,* 743 F.3d 1236, 1243 (9th Cir. 2014) (citations and quotation marks omitted). Other courts around the country have simplified the matter into really two elements for an interference claim: "an employee 'only needs to show that [1] he was entitled to benefits under the FMLA and [2] that he was denied them." *Budhun v. Reading Hosp. & Med. Ctr*., 765 F.3d 245, 252 (3d Cir. 2014) This is the real nub of it. It cannot be genuinely disputed that Tomas was eligible for FMLA leave, that Barrick is a covered employer, that Tomas was entitled to leave under the FMLA (he had a serious health condition because he was taken off work by the doctor for more than three days and sought

treatment multiple times), notice is not an issue because this was a sudden trauma and the employer actually transported him to the doctor after other employees put a splint on his ribs, Barrick has acknowledged in court filings that Tomas was granted FMLA leave, and it is undisputed that Barrick denied him restoration to his job at the end of his leave. The elements are all met.

The only competent medical evidence is Dr. Black's November 1, November 6, and November 16, 2017 certifications (ER-161-165, 167-170, 174, 195) that Tomas was to be off of work for more than three consecutive calendar days because of his chest wall contusion and the accompanying muscle spasm and fasciculations for which he was prescribed the muscle relaxer Flexeril which would make it unsafe for him to drive 26-ton haul trucks in an underground mine. (ER-223, 233, 238-239) There is no competent medical evidence to refute Dr. Black's certification that Tomas had a health condition that kept him out of work for more than three consecutive calendar days and for which he would receive ongoing care (at least two times within 30 days of the onset). 29 CFR § 825.113 and .115. This is the very definition of a serious health condition under the FMLA. Dr. Black's testimony corroborates all of this. (ER-196-261)

The jury did not answer any of the other questions and the one it did answer it got patently wrong. Under the standard applicable set forth above, this error should result in the reversal of the judgment and a remand for a new trial.

## III. <u>THE JUDGMENT IN THIS CASE SHOULD BE REVERSED BASED ON A FIRST IMPRESSION ERROR OF LAW.</u>

In this case Plaintiff-Appellant sought to have the jury instructed as to the employer's ability to seek recertification or a second opinion under 29 U.S.C. § 2613. Fundamentally this goes to what proof a defendant employer must provide in order to successfully challenge an employee's proper certification showing that he or she is entitled to leave because of his or her own serious health condition under the FMLA. This appears to be an issue of first impression in this circuit. There is one important District Court case in this circuit that supports the Plaintiff-Appellant's argument, and a few other District Court cases from other circuits that also support the argument that an employer cannot defeat an employee's entitlements under the FMLA with respect to leave taken for that employee's own serious health condition without providing contrary MEDICAL EVIDENCE of the kind that could be obtained through the dispute resolution scheme set forth in 29 U.S.C. § 2613.

There are some cases around the country, including some decisions from other Court of Appeals circuits that appear to hold that no medical evidence is required for an employer to defeat an employee's entitlements under the FMLA and that evidence other than medical evidence can be used to show that an employee does not suffer from a serious health condition. These decisions rest largely on the use of the word "may" in 29 U.S.C. § 2613 (c)(d) and (e) which

those courts read to be permissive and, as such, those courts hold that the plain language of the statute is that no medical evidence need be obtained or presented in order to defeat an FMLA interference claim because the employer is simply not required to obtain such evidence under the statute. Plaintiff-Appellant's argument herein is that this reading of the statute is incorrect and inconsistent with the public policy embodied in the FMLA scheme which is a remedial statutory scheme that must be liberally and beneficially construed in favor of employees who are seeking medical leave under the Act. The use of the word "may" in the context of the dispute resolution scheme in 29 U.S.C. § 2613 is either actually ambiguous or is being misconstrued or misapplied by courts that have held that there is no need to follow this scheme and obtain actual MEDICAL EVIDENCE if an employer is to successfully defeat an employee's medical certification showing an entitlement to the benefits provided by the FMLA.

1. **Plaintiff-Appellant Provided Sufficient Certification, Defendant-Appellee has Never Questioned the Sufficiency of the Certification of Dr. Black, and Defendant-Appellee Never Obtained or Presented any Contrary Medical Evidence.**

29 U.S.C. § 2613 states in relevant part as follows:

**(a)In general**

An employer may require that a request for leave under subparagraph (C) or (D) of paragraph (1) or paragraph (3) of section 2612(a) of this title be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee, or of the next of kin of an individual in the case of leave taken under such paragraph (3), as appropriate. The

20

employee shall provide, in a timely manner, a copy of such certification to the employer.

**(b)Sufficient certification**

Certification provided under subsection (a) shall be sufficient if it states—

(1)the date on which the serious health condition commenced;

(2)the probable duration of the condition;

(3)the appropriate medical facts within the knowledge of the health care provider regarding the condition;

(4)

…

(B)for purposes of leave under section 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employee;

…

**(c)Second opinion**

(1)In general

In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) for such leave.

(2)Limitation

A health care provider designated or approved under paragraph (1) shall not be employed on a regular basis by the employer.

**(d)Resolution of conflicting opinions**

(1)In general

In any case in which the second opinion described in subsection (c) differs from the opinion in the original certification provided under subsection (a), the employer may require, at the expense of the employer, that the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee concerning the information certified under subsection (b).

(2)Finality

The opinion of the third health care provider concerning the information certified under subsection (b) shall be considered to be final and shall be binding on the employer and the employee.

**(e)Subsequent recertification**
The employer may require that the eligible employee obtain subsequent recertifications on a reasonable basis.

In this case, Barrick did not insist on any specific certification form, but the November 1, 2017 reports, and those of November 6 and 16, (ER-161-165, 167-170, 174, 195) from Dr. Black that were provided to Barrick was sufficient for certification under subsection (b) because the report stated the date Tomas's serious health condition commenced (November 1, 2017), the probable duration (until at least November 6, 2017 when Tomas would follow up, and subsequently through November 19, 2017), the appropriate medical facts within the knowledge of Dr. Black (that Tomas had a chest wall contusion), and that Tomas was unable to perform the functions of his position (because Dr. Black took Tomas completely off of work).

Accordingly, Tomas was certified as needing more than three days off of work, he was expected to need ongoing treatment and he did treat with Dr. Black on November 6 and November 16, 2017 which was all within the first 30 days after the serious health condition began. 29 CFR § 825.113 and .115. The certification was sufficient, but as noted Barrick has never challenged the sufficiency of Tomas's certification. Barrick, which apparently decided that it had

22

doubts about the validity of Dr. Black's certification, never demanded recertification as is had the right to do, and never obtained a second opinion from a doctor of its choice as it had the right to do. Barrick relies on no medical evidence whatsoever. Instead, Barrick's position appears to be that Tomas was AS A MATTER OF FACT NOT INJURED and therefore did not suffer from a serious health condition. This is what raises the issue of first impression in this case.

**2. Defendant-Appellant Cannot Challenge Tomas's Certification of His Need for Leave Under the FMLA and Cannot Defeat an Interference Claim Without Contrary Medical Evidence.**

Tomas contends, and contended in the District Court, that Barrick cannot defend against Tomas's entitlement to leave under the FMLA and reinstatement to his position at the end of his leave because it has neither obtained, nor submitted as evidence and competent medical evidence to refute Tomas's certification from Dr. Black. Barrick relied primarily on video surveillance provided by a detective its workers' compensation third-party administrator hired to follow Tomas around for a few days, during which the detective obtained a several minutes of video showing Tomas doing some light handyman work on his property. This video was never reviewed by Dr. Black, nor any other competent health care provider, to determine if this type of activity for an exceedingly short length of time in comparison to the 12-hour work shifts driving a haul truck underground was sufficient to alter Tomas's certification for leave. No doctor ever contradicted Dr.

Black. Dr. Black never changed his mind. Barrick has nothing but its own unqualified subjective and self-serving opinion that somehow Tomas was faking his injury and need for leave. This in the face of its knowledge that Dr. Black diagnosed muscle spasm and observed fasciculations that are INVOLUNTARY muscle conditions that cannot be faked. (ER 166, 173)

The inescapable conclusion from the above facts is that Barrick had no competent evidence to dispute Tomas's serious health condition and need for leave under the FMLA and, therefore, his entitlement to be restored to his position at the end of his leave on or about November 19, 2017.

The District Court in the Northern District of California appears to have been the first court to consider the issue which is set forth as follows:

> whether an employer who denied an employee's request for leave without employing the second and third medical opinion procedures set out in section 2613, may later challenge in a civil action under the Act the accuracy of the medical certification submitted by the employee in support of his request for medical leave.
> The language of the Act expressly provides that if the employer has reason to doubt the validity of the employee's initial certification, the employer "may" require the employee to obtain a second and possible third medical opinion. See 29 U.S.C. § 2613. The issue presented here is what, if any, are the consequences to the employer who opts not to seek a second and possibly third medical opinion.[4]

---

[4] Plaintiff-Appellant here notes that also the employer has the right to seek a recertification from the employee "on a reasonable basis." 29 U.S.C. § 2613(e) and a reasonable basis would certainly include an employer discovering evidence that it thinks demonstrates that an employee no longer needs to be out on FMLA leave.

*Sims v. Alameda-Contra Costa Transit Dist.,* 2 F. Supp. 2d 1253, 1260 (N.D. Cal. 1998).

The court in *Sims*, unlike some other courts that have considered the issue, determined that the language of 29 U.S.C. § 2613 is ambiguous. "Although the language clearly states that the employer 'may' obtain second and third medical opinions, it is not clear whether this is the exclusive way for an employer to contest the content of a medical certification, or whether it is merely an optional dispute resolution mechanism." *Sims*, 2 F.Supp. 2d at 1260. The court then went on to analyze the purpose, structure, internal logic, and the legislative history of the FMLA and concluded that an employer could not forego its option of obtaining second and/or third opinions as afforded by the Act and then be allowed to challenge in litigation the certification provided by the employee:

> To allow courts, rather than doctors, to determine the medical condition of an employee who seeks leave would upset the balance between the eligible employee's right to swift and expeditious coverage and the employer's right to ensure that the requested leave is needed. The policy of providing swift and expeditious coverage would be undermined if an employer could simply deny leave to an employee who has presented adequate certification of his need for and entitlement to medical leave. An employee in that situation would have no recourse other than to forego the leave to which he may be entitled under the Act (if he requests leave in advance), or to take leave, suffer the employer's discipline for the "unexcused" absence (which may include termination), sue his employer, and then wait for the court to decide.

*Id*. at 1261  In the present case the situation is worse.  In this case Barrick approved the leave of absence, but then did not permit Tomas to come back to work at the

end of the leave without doing ANYTHING to try to confirm or refute Tomas's eligibility. If Barrick had timely challenged the certification of Dr. Black, Tomas would have had time to have it verified himself, even as Barrick chose not to avail itself of its second opinion or recertification demand options. This is prejudicial to an employee like Tomas. It is simply unacceptable to allow an employer to challenge and fight the issue of serious health condition and entitlement to protection under the FMLA with NO MEDICAL EVIDENCE to contradict the certification provided by the employee.

> The statutory scheme is designed to have medical determinations made by health care providers, rather than courts. See Reich v. The Standard Register Co., 1997 WL 375744, *2, 1997 U.S. Dist. LEXIS 3021, *5-6 (W.D.Va.1997) ("The FMLA contemplates that decisions of whether an employee has a `serious health condition' will be made by doctors."). In responding to comments by the U.S. Small Business Administration (SBA) on the interim regulations adopted by the DOL, the DOL explained that employers are not to make the medical judgments as to whether a particular medical condition is a serious health condition justifying leave under the Act:

> "SBA mistakenly presumes that this is a judgment that the statute and regulations permit an employer to make. If the health condition meets the definition in the regulations at § 825.114 and, as provided in §§ 825.305-825.307, an employee furnishes a completed DOL-prescribed medical certification from the health care provider, the only recourse available to an employer that doubts the validity of the certification is to request a second medical opinion at the employer's expense. Employers may not substitute their personal judgments for the test in the regulations or the medical opinions of the health care providers of employees ... to determine whether an employee is entitled to FMLA leave for a serious health condition."
> 60 Fed.Reg. 2180, 2235 (1995) (emphasis added).

*Sims* 2 F.Supp. 2d at 1261-62. The court also noted that the position taken by the defendant in that case was untenable:

> AC Transit argues that Congress intended the certification procedures of section 2613 to operate as an optional alternative dispute resolution mechanism, but did not intend to divest employers of the right to litigate in court the same issues the procedures could have resolved. This court disagrees. An employer would have little incentive to ever utilize the certification procedures if it would suffer no consequence for failing to do so. Such an interpretation of the Act would effectively allow an employer to terminate an employee for taking leave even where that employee presented to his employer medical documentation that he is entitled to medical leave under FMLA. In the relatively rare event where an employee musters the resources and inclination to file a lawsuit against his (former) employer, the employer would not even be bound by the same privacy protections afforded the employee under section 2613.

*Id.* at 1263. The ultimate conclusion of the court in Sims was that wtihtou availing itself of its opportunity to challenge the employee's medical certification via the procedures provided for in the Act, that the defendant in that case could not legally challenge the employees certification that the employee had a serious health condition entitling him to the benefits afforded by the FMLA: leave of absence and restoration to his job.

Accordingly, Barrick should simply not be permitted to litigate the issue of whether or not Tomas had a serious health condition under the FMLA because it did nothing to have a doctor support such a contradiction to the certification by Dr. Black. As a matter of law, the certification provided by Dr. Black (ER-161, 167, 174, 195) is "sufficient" and must be accepted. 29 U.S.C. § 2613(b); 29 CFR § 825.307. Thus, "upon the submission of a sufficient medical certification, an

employee is entitled to 'FMLA protection unless and until there is contrary medical evidence.'" *Miller v. A T & T*, 60 F.Supp.2d 574, 580 (S.D.W.Va.1999)

Some other courts have agreed with the reasoning of *Sims*. The *Miller* case just cited is one. *Wheeler v. Pioneer Developmental Services, Inc.*, 249 F.Supp.2d 158, 167 (D.Mass 2004) is another. *Williams v. Rubicon, Inc.*, 754 So. 2d 1081, 9 W.H. Cases2d 44 (La. Ct. App. 1999). To be sure there are other courts, including other circuits of the Court of Appeals that have disagreed with *Sims*. *See e.g.*, *Rhoads v. FDIC*, 257 F.3d 373, 386 (4th Cir. 2001) ("Because the term `may' is permissive, the plain language of the statute indicates that an employer who questions the validity of a certification has the option of seeking a second and third opinion, without being required to do so").

For a cogent discussion of why the word "may" in 29 U.S.C. § 2613 is ambiguous and is not merely permissive, see the concurring and dissenting opinion of Justice Moreno of the Supreme Court of California in *Lonicki v. Sutter Health Cent.*, 180 P.3d 321, 74 Cal. Rptr. 3d 570, 585-590, 43 Cal. 4th 201 (2008). In considering language identical to that of the FMLA in the CFRA Justice Moreno stated as follows:

> The lead opinion's reliance on the use of the word "may" is misplaced. It would make little sense for the government to require an employer who has reason to doubt an employee's certification to obtain a second or third opinion. An employer who doubts the employee may still wish to give the employee the benefit of the doubt. Or the employer may satisfy its doubts in the employee's favor by means other than

> obtaining a second medical opinion. Or the cost and trouble of
> obtaining a second or third opinion may not be worth it for the
> employer, for example, when the employee is asking for very little
> time off. The use of "may" merely means that the decision about
> whether to seek a second and third opinion is up to the employer. But
> "may" does not tell us the consequences of an employer's decision not
> to seek a second or third opinion. Those consequences are set forth
> elsewhere in the statute — namely, that an employee's certification
> "shall be sufficient" to authorize medical leave if it contains the
> required information from a bona fide health care provider and if it is
> not challenged by a second and third opinion, as discussed above. (§
> 12945.2, subd. (k)(1).)

*Id*. at 74 Cal.Rptr. 3d 587. The consequences of not utilizing the 2nd and 3rd

opinion procedure should be to bar the employer from challenging the employee's

sufficient certification.

This court should hold that the failure to obtain a 2nd opinion or seek

recertification under the provisions of 29 U.S.C. § 2613 forecloses an employer

from challenging the certification in litigation. With that law clarified, this matter

should be remanded for a new trial so that the jury can be instructed that it must

accept Dr. Black's certification, or the District Court can choose to direct the

verdict or rule on the issue as a matter of law if it chooses. But it is unacceptable

as a matter of law for an employer to be permitted to challenge an employee's

sufficient medical certification by a doctor as being entitled to the protections of

the FMLA due to his or her own serious health condition without contrary

competent medical evidence, presumably to be acquired through the second and

third opinion process set forth in 29 U.S.C. § 2613. The FMLA is a remedial

statute. *Nev. Dep't Hum. Res. v. Hibbs*, 538 U.S. 721, 737-38 (2003) It should be construed and applied liberally in a manner consistent with the Congressional intent to provide job security for employees with serious health conditions so that they can take medical leave from their jobs and be secure in the knowledge that they will be able to return to work and not be fired because of the leave.

## IV. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN REFUSING PLAINTIFF-APPELLANT'S PROPOSED JURY INSTRUCTIONS

Plaintiff's proposed jury instructions that were not agreed to and required rulings by the District Court are at ER_034-050. The District Court's rulings on Plaintiff-Appellant's proposed jury instructions that were rejected and not given by the court are at ER_051-146. The first error to discuss is the most egregious. The District Court, at ER_75:11-76:7, ruled that it would give the following instruction:

### NRS 616C.140(1)

When an employee has a workers' compensation claim he or she shall, if requested by the employer, submit to a medical examination at a time and from time to time at a place reasonably convenient for the employee.

NRS 616C.140(1) (Modified to sentence form from code form and for plain language)

And then, inexplicably, the court did not read the jury instruction to the jury— possibly because it simply forgot to do so, and then doubled down on the error

30

when the matter was brought to the judge's attention at sidebar. (ER_138-139) This workers' compensation statute provides that an employer has a statutory right to require an employee with a workers' compensation claim to submit to a medical examination. The Defendant-Appellee in this case was contending that Tomas was faking an injury or was not as injured as he claimed to be. In the absence of instructing the jury that the Defendant-Appellee had this power and right the jury is left with the impression that the Defendant-Appellee is a victim without any ability to protect itself from this horrible faker of an employee. The jury needed to know that the Defendant-Appellee could easily have just had Tomas examined by another doctor to get a medical determination as to the extent and validity of his injury. The failure of the Defendant-Appellee to avail itself of its right to get medical evidence suggests that its arguments ring hollow and could lead the jury to determine that its purported reasons for terminating Tomas's employment were false and pretextual and that the real reason was because he had filed a workers' compensation claim. Reading through the workers' compensation claim notes provides a glimpse at the hostility that this employer holds against injured workers that are costing it money. (ER_166, 171-173, 175-176) The District Court ruled that it would give this instruction, forgot to do so, and then declined to fix the error. This was prejudicial and not harmless and under the standard set forth above, the case should be remanded for a new trial.

31

Next, the District Court refused, at ER_078-079, the following instruction:

**NRS 616C.015(1)**

An employee shall provide written notice of an injury that arose out of and in the course of employment to the employer of the employee as soon as practicable, but within 7 days after the accident.

NRS 616C.015(1) (Modified only to take out language about death claims and dependents giving notice)

Failure to give this instruction was prejudicial error. The instruction regarding NRS 616.015 would provide the jury with the proper legal context by which to judge the Defendant-Appellee's alleged reason for terminating Tomas Perez's employment, that he had not reported the injury on time. Tomas did not really know or appreciate that he was hurt until he got up from the underground to the cold air at the surface at the end of his shift and that is when the pain kicked in. As soon as that happened, he informed Mine Safety Team member Eloy Diaz that he was hurt and Eloy escorted him to the first-aid room where Tomas filled out the C-1 form which is the Notice of Injury required under the above Nevada statute. (ER_154) The Defendant-Appellee actually does not have a policy where the word "immediate" is used with respect to reporting an injury; however, Tomas reported his injury within a very short period of time ON THE SAME DAY that it happened. The jury needed to be informed that Tomas had up to seven days to

report the injury to his employer. The jury might very well have reached the opposite conclusion from what it did. If properly instructed that by law he had seven days to report the injury the jury could have found that firing Tomas when he reported the injury within 2-3 hours of when it happened is strong circumstantial evidence that it was Tomas's filing the workers' compensation claim that was the proximate cause his termination. That, of course, is tortious and actionable under Nevada's common law. There was testimony in this case that had Tomas never reported the injury at all, he would never have been fired. And that is true. Except for the fact that he was in excruciating pain when he reported the injury, in hindsight Tomas could hypothetically have kept the work injury quiet, gone to Dr. Black on his own and obtained all the same certifications and gotten FMLA leave and been happily restored to his position on November 19, 2017. (ER_174) Reporting it as workers' comp and filing a claim is the but-for reason for Tomas's discharge. Considering the harsh way in which Tomas was fired when he was indisputably injured under the medical evidence in the case, had the jury been properly instructed that the law in Nevada gave Tomas SEVEN DAYS to report his injury to his employer, the jury might very well have reached a different verdict than it did at Question 3 of the Verdict Form. ER_005-007) Failure to give the NRS 616C.015 instruction was prejudicial error.

Next, the District Court refused, at ER_079-080, the following instruction:

33

**NRS 616B.609(1)(b)**

A contract of employment, or any other device, having for its purpose the waiver or modification of the terms or liability created by chapters 616A to 616D, inclusive, of NRS (Nevada's workers' compensation statutes) is void.

NRS 616B.609(1)(b) (Modified to take out irrelevant language about insurance contracts and indemnity contracts; explanatory parenthetical added)

This also constitutes prejudicial error as failing to give this instruction kept from the jury the full and correct state of the law and the failure misled the jury and assisted the Defendant-Appellee in concealing its wrongdoing. This workers' compensation statute voids any "device" that has for its purpose a modification of the terms of the Nevada Industrial Insurance Act. Defendant's policy is such a "device" as it is used by Defendant-Appellee to discourage and prevent claims fom being filed under the Act. It often happens, like it did with Tomas, that a person strains a muscle or tweaks their low back and thinks it will just go away quickly. But then, it doesn't. The seemingly trivial ache or pain that is not reported until a few days later puts a Barrick employee in a pickle. If he or she reports it now, termination follows. Who wants to file a claim if they will be fired? This is the very essence of this tort claim as explained in *Hanson v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984). Barrick, which is functionally self-insured for workers' comp

34

because the first $1 million of every claim is paid directly out of Barrick's wallet and not from its insurance company's funds, discourages claims in violation of public policy by the "device" of its alleged rule (that is not specified in writing). The enforcement of this "immediate reporting" rule is apparently termination. Every employee who just does not appreciate that they are truly injured, but then has to get medical attention and file a workers' compensation claim gets fired. Swell. The policy is used to defeat and discourage claims. This is a public policy violation and NRS 616B.609(1)(b) voids Barrick's device of this chilling rule that is an anathema to the public policy of Nevada.

Next, the District Court refused, at ER_080-082, the following two related instructions:

### NRS 616A.030 "Accident" defined

"Accident" means an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury.

The phrase requiring that an event produce "at the time" objective symptoms of injury, does not require instantaneous manifestation of symptoms. The correct interpretation is that symptoms must manifest themselves within a reasonable time.

NRS 616A.030 (Modified only to add introductory language that it pertains to work comp law and to take out irrelevant language about

prosthetic devices and injuries taking place during social or athletic events) Note that this statute is referenced in the November 10, 2017 determination to deny Tomas's claim; *American Int'l Vacations v. MacBride*, 99 Nev. 324, 661 P.2d 1301 (1983); *State Indus. Ins. Sys. v. Buckley*, 100 Nev. 376, at 380, 682 P.2d 1387 (1984); *Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 184 P.3d 378 (2008).

## NRS 616A.265(1) "Injury" defined

Under Nevada workers' compensation law, "Injury" or "personal injury" means a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result which is established by medical evidence.

The phrase requiring that an tangible happening of a traumatic nature produce "an immediate or prompt result" does not require instantaneous manifestation of symptoms. The correct interpretation is that symptoms must manifest themselves within a reasonable time.

NRS 616A.265(1) (Modified only to add introductory language that it pertains to work comp law and to take out irrelevant language about prosthetic devices and injuries taking place during social or athletic events) Note that this statute is referenced in the November 10, 2017 determination to deny Tomas's claim; *American Int'l Vacations v. MacBride*, 99 Nev. 324, 661 P.2d 1301 (1983); *State Indus. Ins. Sys. v. Buckley*, 100 Nev. 376, at 380, 682 P.2d 1387 (1984); *Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 184 P.3d 378 (2008).

The prejudicial error here is again not fully and correctly informing the jury of the law related to workers' compensation injuries, how they work, and how Barrick is engaging in misrepresentation to cover up its tortious discharge of Tomas. These

statutes, and the way in which they have been construed under the cited caselaw, show that it is common enough that an injured employee does not immediately realize that they are seriously injured and that some period of time may go by before they understand that it is serious enough to be reported and a claim filed. Not giving the jury the context of these definitional statutes permitted Barrick to mislead the jury into thinking that Tomas had done wrong, or was even dishonest, because he did not appreciate his injury and report it until about two hours later when the pain manifested itself. These instructions should have been given and it is prejudicial error requiring a new trial that they were not given.

Next, the District Court refused, at ER_082-085, the following instruction:

### NRS 613.160(1)

An employer, or its manager, cannot lawfully discipline or discharge any employee based on a report by a special agent or detective involving a question of integrity, honesty, or a breach of rules of the employer unless the employer gives notice and a hearing to the employee thus accused, when requested by the employee, at which hearing the accused employee must have the opportunity to confront the person making the report and must have the right to furnish testimony in his or her defense.

NRS 613.160 (modified for clarity and simplification)

This goes to negate, a kind of estoppel if you will, Defendant-Appellee's argument that it was justified in firing Tomas, allegedly because he faked his injury or worked a deception about his injury. The District Court just did not understand that this is Nevada law and what Barrick did in firing Tomas based upon it having had a detective follow him around and video-record him, then questioning his integrity, honesty, or breach of the employer's rules in firing him was AGAINST THE LAW. Tomas was not confronted with and given notice that he was being fired because of the material collected by the detective. Because he was not given notice, he had no opportunity to request a hearing to confront the detective that made the report. Accordingly, it was prejudicial and reversible error to not provide this instruction to the jury. Barrick committed an egregious violation of the law. It was illegal for Barrick to fire Tomas under these circumstances. And this information was kept from the jury. If Barrick is violating the law in firing Tomas, it may be that they are doing so because they are getting back at him for filing a workers' compensation claim. They engaged in sleazy, unlawful conduct as a means to an end to fire an employee that was making a workers' compensation claim. It was wrong and reversible error to keep this information from the jury.

Next, the District Court refused, at ER_071-072, the following instruction:

**LIABILITY NOT NEGATED BY GOOD FAITH OR LACK OF KNOWLEDGE**

A violation of the FMLA occurs when the employer fails to provide an employee with any of his or her entitlements under the Act. There need not be any intent to discriminate and an employer's good faith intentions or lack of knowledge that its conduct violates the FMLA does not protect the employer from liability for its failure to provide an entitlement under the Act. Restoration, or reinstatement to the employee's job, or an equivalent job without loss of benefits or seniority after a leave of absence is something an employee is entitled to under the FMLA.

29 C.F.R. § 825.220(a)(1) & (b); 29 U.S.C. 2614(a); *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1122-23 (9th Cir. 2001); *Liu v. Amway Corp*., 347 F.3d 1125 (9th Cir. 2003).

It was prejudicial error to not give this instruction to the jury. The Defendant-Appellee repeatedly through this case has claimed to have been justified in firing Tomas because *inter alia* Defendant's subjective belief that he faked an injury and fraudulently obtained FMLA leave. Dr. Black's certification and testimony, cited above, establishes that Tomas had a chest contusion, muscle spasm, fasciculations, pain, and a reduced lung capacity—REDUCED BY HALF! (See ER_225-226). Dr. Black would not prescribe Flexeril muscle relaxers unless he was certain that Tomas had the muscle spasm. Muscle spasm and fasciculations cannot be faked as Dr. Black testified. (ER_231, 233) Barrick's workers' compensation file notes demonstrate that it knew all of these things. (ER_166, 171-173, 175-176) So

Barrick is and remains flat out wrong that Tomas was faking an injury. Not giving this instruction resulted in the jury not being fully and fairly instructed on the law as set forth in the statute, cases and regulation cited for authority for the instruction. It simply does not matter what Barrick thought or believed. If it failed to provide Tomas the entitlement to restoration to his job because of a falsehood that Barrick believed, Barrick is still liable for a violation of the FMLA. The District Court erred in not giving this instruction and reversal is proper and a new trial should be ordered.

Next, the District Court refused, at ER_073-075, the following two instructions:

### EMPLOYER'S RIGHT TO REQUEST RECERTIFICATION

An employer may request recertification within the first 30 days of an FMLA leave if the employer receives information that casts doubt upon the employee's stated reason for the absence or the continuing validity of the doctor's certification of the need for time off due to the employee's own serious health condition.

29 C.F.R. § 825.308 (c)(3) Recertifications for leave taken because of an employee's own serious health condition or the serious health condition of a family member (Modified for grammar, to add contextual introduction, and to remove example given)

40

## 29 U.S.C. 2613(c) and (d)-EMPLOYER'S RIGHT TO SECOND AND THIRD OPINIONS

Where an employer doubts the validity of the medical opinion that establishes the employee's entitlement to leave under the FMLA, the employer has the right to obtain a second opinion concerning the medical need for leave.  If the second opinion obtained does not agree with the medical opinion that leave under the FMLA is needed for the employee then a third opinion may be obtained and the third opinion will break the tie and be conclusive .

29 U.S.C. 2613(c) and (d); 29 C.F.R. § 825.307(b) and (c).
These two instructions both implicate the argument above that an employer has an obligation to obtain recertification or a second or third opinion if it intends to legally challenge the employee's medical certification that entitles him or her to FMLA benefits (leave and restoration at the end of the leave).  Plaintiff-Appellant contends that only competent medical evidence can be relied upon to challenge or defeat an employee's sufficient certification.  Notwithstanding that legal argument, set forth above, it was prejudicial error requiring reversal and a new trial to not have given the jury full and complete information on the law.  Similar to the argument with respect to the NRS 616C.140(1) instruction above, the jury should have been instructed that Barrick had options to ask for a recertification or a second opinion with a doctor of its choice, and a third opinion if there was a split between the first and second.  Keeping this information from the jury was

41

prejudicial. The jury very well could have come to different decisions regarding the FMLA claim and the workers' comp wrongful discharge claim had it been instructed and given this information. It could very well have looked at the failure of Barrick to avail itself of its rights under these statutes and regulations that are specifically in place to give employers tools to ferret out fraud and false claims of entitlement to FMLA rights and come to a different decision. The jury could have seen Barrick's failure to implement these tools as a lack of conviction in its rather specious contention that Tomas was faking muscle spasms and fasciculations for which his doctor prescribed him medication that precluded him from working his job. But the jury was never allowed to hear about the blind eye that Barrick turned to its rights. It was not fully, fairly, and completely informed of the law that easily could have swayed the jury's decision. The judge must give the law. The lawyers cannot independently instruct the jury. When the jury has not been properly instructed and told about the law by the judge, that is prejudicial error and the verdict must be thrown out and a new trial ordered.

## <u>CONCLUSION</u>

Based upon the foregoing, the jury's verdict is not supported by substantial evidence and is plainly erroneous on the facts and the law because it is indisputable that Tomas Perez had a serious health condition under the FMLA. Further, the District Court committed reversible error by refusing the proposed jury instructions

noted herein because the failure to do so resulted in a failure to fully, fairly, and correctly provide the law to the jury with proper context.  The judgment and order of the District Court should be reversed and this matter remanded for a new trial.

Date:  _____July 24, 2023_____

                              _____/s/ James P. Kemp_____
                              James P. Kemp, Esq.
                              Nev. Bar No. 6375
                              Kemp & Kemp
                              7435 W. Azure Drive, Ste. 110
                              Las Vegas, NV 89130
                              Attorney for Appellant Tomas Perez

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____23-15043_____

      I am the attorney or self-represented party.

      **This brief contains** _____**10,938**_____ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

      I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
      [ ] it is a joint brief submitted by separately represented parties;
      [ ] a party or parties are filing a single brief in response to multiple briefs; or
      [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____/s/ James P. Kemp_____ **Date** _____**July 24, 2023**___
*(use "s/[typed name]" to sign electronically-filed documents)*

44