Case No. 23-15043

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TOMAS PEREZ,
*Plaintiff -Appellant,*
vs.
BARRICK GOLDSTRIKE MINES, INC.,
*Defendant-Appellee.*

## DEFENDANT-APPELLEE'S RESPONSE BRIEF

On Appeal from the United States District Court for the District of Nevada,
Honorable Robert C. Jones, District Court Case No. 3:19-cv-00067

David C. Castleberry
david.castleberry@ogletree.com
Amanda L. Fuller
amanda.fuller@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
15 W. South Temple, Suite 950
Salt Lake City, Utah 84101
Telephone: 801-658-6100
Facsimile: 801-385-1707

Jack S. Sholkoff, CA 145097
jack.sholkoff@ogletree.com
Catherine L. Brackett, CA 332918
catherine.brackett@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant-Appellee BARRICK GOLDSTRIKE MINES, INC.

## <u>CERTIFICATE OF INTERESTED ENTITIES OR PERSONS</u>

### *Tomas Perez v. Barrick Goldstrike Mines, Inc.*

Defendant-Appellee Barrick Goldstrike Mines, Inc. makes the following disclosure pursuant to Rules 26.1 and 28 of the Federal Rules of Appellate Procedure:

Barrick Goldstrike Mines, Inc. was converted to Barrick Goldstrike Mines, LLC on September 30, 2023. All rights of creditors, and all debts, liabilities, and duties of Barrick Goldstrike Mines, Inc. remain attached to Barrick Goldstrike Mines, LLC. Barrick Goldstrike Mines, LLC is owned and operated by Nevada Gold Mines LLC, which is a joint venture owned by two publicly traded corporations: Barrick Gold Corporation, which owns a 61.5% economic interest and is the operator of Nevada Gold Mines LLC; and Newmont Corporation, which owns a 38.5% economic interest in Nevada Gold Mines LLC. Defendant-Appellee is not aware of any other entity that has a financial interest in the outcome of this matter.

Respectfully submitted,

DATED:  December 15, 2023          OGLETREE, DEAKINS, NASH, SMOAK
                                                  & STEWART, P.C.

By: _____

Jack S. Sholkoff
David C. Castleberry
Amanda L. Fuller
Catherine L. Brackett

Attorneys for Defendant-Appellee
BARRICK GOLDSTRIKE MINES, INC.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................1

II. JURISDICTIONAL STATEMENT ....................................2

III. STATEMENT OF THE ISSUES ......................................3

IV. STATEMENT OF THE CASE .........................................4

    A. Barrick Maintains Strict Policies Requiring Immediate Reporting And Investigation Of All Potentially Safety-Related Incidents Regardless Of The Existence Of A Resulting Injury. ...........................................4

    B. Perez Alleges He Was Injured On The Job But, In Violation Of Company Policy, Fails To Report The Accident Until Hours After It Allegedly Occurred. .............................................6

    C. Per Standard Protocol, Barrick Investigates The Alleged Accident, And Also Hears Allegations That Perez Fraudulently Obtained Leave. .........8

    D. Barrick Terminates Perez's Employment. ....................................18

    E. Perez Sues Barrick For FMLA Interference And Wrongful Discharge In Retaliation For Filing A Workers' Compensation Claim. .......................19

    F. During A Five-Day Jury Trial, Perez Fails To Raise Any Arguments Regarding The Sufficiency Of The Evidence To Support His Claims. ........20

    G. The Jury Finds Perez Did Not Suffer A Serious Health Condition And That Barrick Did Not Retaliate Against Him. ...............................................21

V. SUMMARY OF ARGUMENT .........................................22

VI. STANDARD OF REVIEW ..............................................26

    A. Even If Perez Can Overcome Waiver, The Court Must Still Affirm The Jury's Verdict Because It Is Supported By Substantial Evidence In The Record. .......................................26

    B. Even If Perez Can Overcome Waiver, The Verdict Must Be Affirmed Because Perez Cannot Demonstrate Any Prejudicial Error. .........................26

iii

VII.   PEREZ WAIVED THE RIGHT TO CHALLENGE THE JURY'S FINDING THAT HE DID NOT HAVE A SERIOUS HEALTH CONDITION. ..................................................................................27

VIII.  PEREZ WAIVED THE RIGHT TO REQUEST A NEW TRIAL BASED ON PURPORTED INSTRUCTIONAL ERRORS.............................................31

IX.    EVEN IF PEREZ DID NOT WAIVE HIS ABILITY TO ATTACK THE JUDGMENT, THE COURT SHOULD AFFIRM BECAUSE THE JUDGMENT IS BASED UPON SUBSTANTIAL EVIDENCE AND DID NOT INVOLVE PREJUDICIAL ERROR. ..................................................................33

A. Overwhelming Evidence Supports The Jury's Finding That Perez Did Not Have A "Serious Health Condition" That Would Entitle Him To The Protections Of The FMLA. ..................................................33

   1. The Jury Considered Video Evidence Showing That Perez Comfortably Performed Tasks He Told Dr. Black Caused Severe Pain As A Result Of His Injury; And, When Confronted With This Evidence Upon His Return From Leave, Perez Stated He Had "Nothing To Say." .....................................................................34

   2. Dr. Black Testified, As A Lay Witness, That His Treatment Plan Was Based Entirely On Perez's Subjective Complaints Of Pain.............39

   3. Even If The Jury Had Found A "Serious Health Condition," Substantial Evidence Supports Barrick's Decision To Deny Perez Reinstatement. .................................................................44

B. The District Court Properly Refused To Instruct On Requirements Imposed By State Statutes That Do Not Apply To This Case. ....................50

   1. The Court Properly Refused To Instruct That, Under NRS § 616C.140(1), An Employer May Require Periodic Medical Examinations Of An Employee Receiving Workers' Compensation Benefits..................................................................52

   2. The Court Properly Refused To Instruct That Employees Seeking Workers' Compensation Benefits Must Report Covered Injuries Within Seven Days Under NRS § 616C.015(1).......................................53

iv

3. The Court Properly Refused To Instruct That Employment Contracts Which Frustrate The Goals Of The Workers' Compensation Code Are Void Under NRS § 616B.609(1)(b). ...............54

4. The Court Properly Refused To Instruct On The Definitions Of "Accident" And "Injury" For A Workers' Compensation Claim Under NRS §§ 616A.030, 616A.265(1)....................................55

5. The Court Properly Refused To Instruct On The Requirements For Utilizing The Report Of A "Spotter" Under NRS § 613.160. ................57

C. There Was No Error In Refusing To Instruct That Barrick's "Good Faith" Or "Lack Of Knowledge" Would Not Negate Its Liability For FMLA Interference. ..........................................................................58

X. CONCLUSION ..................................................................................59

**CERTIFICATE OF COMPLIANCE** ....................................................61

**CERTIFICATE OF DIGITAL SUBMISSION** ..................................62

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Barnard v. Theobald*,
  721 F.3d 1069 (9th Cir. 2013) ........................................................26

*Brown v. Cty. of San Bernardino*,
  840 Fed. Appx. 297 (9th Cir. 2021) ..............................................30

*Clem v. Lomeli*,
  566 F.3d 1177 (9th Cir. 2009) ........................................................27

*Dupree v. Younger*,
  143 S. Ct. 1382 (2023) ....................................................................31

*EEOC v. Go Daddy Software, Inc.*,
  581 F.3d 951 (9th Cir. 2009) ..........................................................31

*Gantt v. City of L.A.*,
  717 F.3d 702 (9th Cir. 2013) ..........................................................27

*Kode v. Carlson*,
  596 F.3d 608 (9th Cir. 2010) ..........................................................33

*Lewis v. U.S.*,
  641 F.3d 1174 (9th Cir. 2011) ........................................................49

*Marchisheck v. San Mateo Cty.*,
  199 F.3d 1068 (9th Cir. 1999) ........................................................50

*Nagy v. Western Alliance Bank*,
  No. 2:16–CV–2095 JCM (GWF), 2018 WL 3094874 (D. Nev.
  June 22, 2018)..................................................................................33

*Nitco Holding Corp. v. Boujikian*,
  491 F.3d 1086 (9th Cir. 2007) ..................................................30, 31

*Nunez v. Sahara Nevada Corp.*,
  677 F. Supp. 1471 (D. Nev. 1988)..............................................57, 58

*O'Brien v. R.C. Willey Home Furnishings*,
  748 Fed. Appx. 721 (9th Cir. 2018)............................................................38, 58

*Roberts v. Spalding*,
  783 F.3d 867 (9th Cir. 1986) ...................................................................51

*Sims v. Alameda-Contra Costa Transit District*,
  2 F. Supp. 2d 1253 (N.D. Cal. 1998).......................................46, 47, 48

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) .................................................................51

*Swinton v. Potomac Corp.*,
  270 F.3d 794 (9th Cir. 2001) ...................................................................27

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*,
  546 U.S. 394 (2006).................................................................*passim*

*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018) .........................................................2, 30, 31

*Zhang v. Am. Gem. Seafoods, Inc.*,
  339 F.3d 1020 (9th Cir. 2003) ................................................................32

**Federal Statutes**

15 U.S.C.A.
  § 78m-2(a)(1)(G) ...................................................................................5

28 U.S.C.
  § 1291..................................................................................................2
  § 1331..................................................................................................3

29 U.S.C.
  § 2611.................................................................................................34
  § 2612(a)(1)(D)....................................................................................33
  § 2613.......................................................................28, 44, 46, 49
  § 2614.................................................................................................45

30 U.S.C.
  § 813(c)-(e), (g)-(h), (j) .......................................................................5

29 U.S.C.S.
    § 2612..................................................................................................45

Family and Medical Leave Act of 1993 ...................................................1

**Nevada Statutes**

NRS
    § 613.160.......................................................................................57, 58
    § 616A.030............................................................................................55
    § 616A.265(1).......................................................................................55
    § 616B.609(1)(b)...................................................................................54
    § 616C.015..............................................................................53, 54, 55
    § 616C.140.......................................................................................52, 53

**Other Authorities**

29 C.F.R.
    § 825.113...............................................................................................34
    § 825.115(a)(1) ....................................................................................34
    § 825.216...........................................................................45, 46, 48, 49

Federal Rules of Evidence
    Rule 701(c).............................................................................................39
    Rule 702.................................................................................................40

Federal Rules of Civil Procedure
    Rule 50 ........................................................ 2, 3, 21, 23, 29, 30, 31
    Rule 59 ......................................................23, 29, 30, 32, 33

Ninth Circuit Rule 27-14 ......................................................................12

State Bar of Nevada, Publications Committee, *Nevada Jury
    Instructions: Civil* at Instruction 16.4 (2018 Ed.)............................52

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FMLA - 16
    (Nov. 15, 1993) .............................................................................48, 49

# I.  <u>INTRODUCTION</u>

The jury concluded, after hearing extensive evidence, that plaintiff-appellant Tomas Perez ("Perez") did not suffer from a "serious health condition" pursuant to the Family and Medical Leave Act of 1993 ("FMLA").  It also concluded, having heard evidence that Perez appeared to have obtained family medical leave fraudulently, that Perez's employer, Barrick Goldstrike Mines, Inc. ("Barrick"), did not fire Perez in violation of Nevada common law.

Perez contends that the verdict is not supported by sufficient evidence and must be overturned.  He argues that his serious health condition can be established as an "indisputable medical fact."  Perez also contends that Barrick somehow violated his rights even though there was evidence that Barrick learned that Perez might be engaging in fraud, investigated it, confronted Perez with the evidence, and then fired him when he failed to even *attempt* to refute the findings.  In fact, not only did Perez have "nothing to say" about the fraud during his employment, he said nothing to refute it during the trial itself.  The jury easily saw through his claims, and understood what this case was about.

Beyond the total lack of evidence *or law* to support Perez's claims on appeal, Perez faces another hurdle: Perez did not ask the trial court to overturn the verdict because of insufficient evidence, or any other reason; Perez made no post-trial motions at all.  Perez never asked the District Court to enter judgment as a

1

matter of law as to any of the issues raised on appeal, including whether he had a serious health condition pursuant to the FMLA. Likewise, Perez never even moved for a new trial in the Court below.

Perez's failure to seek post-trial relief in the District Court is fatal to his appeal. "[A] post-verdict motion under Rule 50(b) is an *absolute prerequisite* to any appeal based on insufficiency of the evidence." *Williams v. Gaye*, 895 F.3d 1106, 1135 (9th Cir. 2018) (emphasis added) (internal quotations omitted). Binding precedent precludes this Court from considering Perez's arguments that he is entitled to judgment as a matter of law or a new trial based on insufficient evidence. *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006). And Perez's arguments based on purported instructional errors fare no better. He has not only waived his right to request a new trial by failing to advance it in the Court below; but he has also failed to demonstrate any prejudicial errors that would warrant relief in any event.

The jury understood the facts and the law of this case, and correctly applied the law in reaching a just result. Perez failed to challenge the decision in the trial court, and even if he had, his challenge would have failed. This Court should affirm the District Court's Judgment.

## II.     JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. section 1291. On February

6, 2019, Perez initiated this action in the U.S. District Court for the District of Nevada, alleging federal question jurisdiction under 28 U.S.C. section 1331, due to alleged violations of the FMLA, and supplemental jurisdiction of his related claims for wrongful termination in violation of Nevada public policy. The matter proceeded to a jury trial from November 7 to 11, 2022, which resulted in a verdict for Barrick on each of Perez's claims. The District Court entered judgment on the jury's verdict on December 13, 2022. Perez appeals from the order of judgment.

## III.  STATEMENT OF THE ISSUES

A.    Pursuant to *Unitherm*, 546 U.S. at 404, by failing to move under Rule 50(a) and 50(b) of the Federal Rules of Civil Procedure,[1] did Perez waive all arguments regarding the sufficiency of the evidence that he had a "serious health condition" under the FMLA?

B.    Did Perez waive any right to argue he is entitled to a new trial based on purported instructional errors by failing to seek such relief in the Court below?

C.    Despite Perez's failure to seek relief in the District Court, if this Court nonetheless exercises its discretion to consider whether Perez is entitled to a new trial due to purported instructional errors, did the District Court prejudicially err by refusing to instruct the jury on state statutes that do not apply to this action,

---

[1] Unless otherwise specified, any reference to a "Rule" made herein refers to the relevant provision of the Federal Rules of Civil Procedure.

3

including the requirements and legal standards of Nevada's workers' compensation system, and the "Spotters" statute that was not alleged in this case and does not allow for any private right of action?

D.     Despite Perez's failure to seek relief in the District Court, if this Court nonetheless exercises its discretion to consider whether Perez is entitled to a new trial due to purported instructional errors, then did the District Court prejudicially err by refusing to instruct the jury that Barrick's "good faith" belief that Perez had engaged in fraud would not "negate" Barrick's liability for FMLA interference?

E.     Despite Perez's failure to seek relief in the District Court, if this Court nonetheless exercises its discretion to consider whether Perez is entitled to a new trial due to purported instructional errors, then did the District Court prejudicially err by refusing to instruct the jury that the FMLA *required* Barrick to obtain a second medical opinion before denying Perez reinstatement when it possessed evidence that he fraudulently obtained leave to perform work on his outside business activities?

## IV.     <u>STATEMENT OF THE CASE</u>

### A.     <u>Barrick Maintains Strict Policies Requiring Immediate Reporting And Investigation Of All Potentially Safety-Related Incidents Regardless Of The Existence Of A Resulting Injury.</u>

Barrick Gold Corporation is a publicly-traded company that owns or operates mines throughout the world, and is the largest producer of gold in the U.S.

4

Barrick is the majority owner and operator of Nevada Gold Mines LLC, which now includes "Barrick Goldstrike Mines."  *See* 1-SER-046.[2]

As a U.S. mine operator, Barrick is subject to federal and state mine safety and environmental regulations, including those promulgated by the Mine Safety Health Administration ("MSHA").  1-SER-050-051; 2-SER-331.  Certain safety-related incidents are immediately reportable under MSHA regulations and Nevada law.  2-SER-331.  Barrick investigates and documents even *potential* safety-related incidents to determine the seriousness of any resulting harm, in order to comply with federal and state law and to protect the safety of its employees.  2-SER-323-331; *see, e.g.*, 30 U.S.C. § 813(c)-(e), (g)-(h), (j); *see also* 15 U.S.C.A. § 78m-2(a)(1)(G).

Barrick maintains strict policies and practices to ensure compliance with these reporting and recordkeeping requirements.  *See, e.g.*, 2-SER-295-313; 2-SER-318-332.  Barrick requires immediate reporting and investigation of all incidents involving Barrick personnel or property that "resulted or *could have resulted* in harm to people, damage to property, environment, security, or loss of production."  2-SER-320 (emphasis added).  Per company policy, even "minor" incidents or injuries must be reported to a supervisor "immediately."  2-SER-295

---

[2] "SER" refers to Barrick's "Supplemental Excerpts of Record," filed concurrently herewith.

(emphasis omitted); *see also* 1-SER-034; 1-SER-109-110; 1-SER-114-115.

Barrick immediately investigates all incidents and injuries by collecting statements from any witnesses and photographs of the scene. 2-SER-320-321; 2-SER-327-330; 2-SER-295-296. Given Barrick's safety and operational concerns, per company policy, a first-time failure to immediately report safety-related incidents can result in termination of employment. 2-SER-306-309.

### B. Perez Alleges He Was Injured On The Job But, In Violation Of Company Policy, Fails To Report The Accident Until Hours After It Allegedly Occurred.

Perez worked as an underground mine haul driver at Barrick Goldstrike Mines from February 2007 until his termination on November 20, 2017. 2-SER-212-213; 2-SER-338. At approximately 5:00 A.M. during his shift on November 1, 2017, Perez claims he was injured while driving the mine haul truck underground. ER_154; 2-SER-214-215; 2-SER-333.[3] Perez claims the armrest pushed into the side of his chest when he swerved his large haul truck to avoid hitting a rock about the size of a Kleenex box, causing the truck to collide with the side of the mine. 2-SER-358. Although he was driving only seven miles per hour at the time of the accident,[4] Perez claims he did not have a chance to hit the brakes

---

[3] "ER" refers to Perez's Excerpts of Record filed in support of this appeal.

[4] At trial, Perez testified the underground mine haul truck has a maximum speed of about 15 miles per hour. 2-SER-216.

to stop from hitting the wall of the mine.  2-SER-216.  Perez claims he did not immediately realize he was injured by the accident, and therefore finished his shift before finally reporting the injury to Barrick, hours later.  1-SER-031:3-10.

Upon reporting the injury, Perez was examined by an emergency medical technician ("EMT") at the worksite.  1-SER-024-026; 2-SER-339.  The EMT did not observe any outward signs of injury, such as bruising, redness, or swelling in the affected area.  2-SER-340.  Perez reported that, in the hours since his injury, his chest had tightened and it was difficult to breathe.  ER_217:6-12.

Barrick transported Perez to a local medical clinic to be evaluated by a physician covered by Barrick's workers' compensation insurance.  2-SER-358. The physician, Dr. Black, also noted no outward signs of injury.  ER_213:15-ER_215:16.  Dr. Black conducted X-rays, which showed no abnormalities. ER_209:11-18; ER_249:19-ER_250:5.  Although a representative of Barrick's workers' compensation insurance provider accompanied Perez to the clinic, Perez declined to allow the representative into the exam.  2-SER-358; 1-SER-202.

Although he had no outward signs of injury, Perez reported the nature of his accident and resulting pain to Dr. Black.  ER_214:9-ER_215:12; ER_247:18-ER_248:8.  Based on Perez's subjective description of his injuries and pain, Dr. Black diagnosed a chest well contusion and muscle spasm.  ER_161-165.  Dr. Black prescribed a muscle relaxant and recommended five days off from work for

rest and recovery. ER_161-165; ER_249:11-18. Perez was scheduled for a re-check with Dr. Black on November 6, 2017. ER_161-165.

On November 6, at his second appointment with Dr. Black, Perez indicated he still had significant pain that was especially pronounced when "push[ing] up on his left arm/forearm," attempting to "get[] in and out of chair," and while "sitting and standing." ER_167-170; *see also* ER_252:9-ER_254:12. Perez reported that he tried to suppress any coughing and sneezing due to the severity of the pain. ER_167-170. Based on these additional complaints, Dr. Black recommended that Perez remain off of work for another 11 days, until November 17, 2017. ER_167-170. At a final appointment with Dr. Black on November 16, 2017, Perez was cleared to return to work with no restrictions on November 19. ER_174.

## C. Per Standard Protocol, Barrick Investigates The Alleged Accident, And Also Hears Allegations That Perez Fraudulently Obtained Leave.

On November 1, upon learning of the accident, Barrick, following standard company protocol, immediately investigated the site of the alleged collision. 1-SER-150-151; 1-SER-115-117. Barrick captured photographic and video evidence of the truck and the site allegedly involved in the accident. ER_177-193. The company found no evidence that Perez's mine haul truck had collided with the side of the mine. 1-SER-117-121. Just after the accident, Perez indicated he exited the truck, picked up the rock he had swerved to avoid, and threw it into the back of the

truck—a description seemingly inconsistent with his physical limitations resulting from the injury. 1-SER-135; 2-SER-358-361. Barrick also noted that Perez failed to *ever* report the safety incident to his direct supervisor (2-SER-358-361), a clear violation of Barrick's company policies meant to ensure a safe workplace in the mines (2-SER-304-313).

As part of its investigation, Barrick also collected statements from the EMT who initially examined Perez, and Perez's co-workers who were present when he reported the injury. *See, e.g.*, 2-SER-340; 2-SER-357. The EMT, Nikkayla Simon, stated she found no "redness," "bruising," or other "abnormalities" present on his ribcage. 2-SER-340. Simon indicated Perez remained standing throughout her examination and said it was "difficult (hurt) to breath[e]." 2-SER-340. She wrote that Perez's "lung sounds were clear bi-laterally," and his blood oxygen levels registered as normal. 2-SER-340.

Based on its initial investigation, Barrick could not corroborate Perez's account of the accident or his resulting injuries, and had reason to doubt the veracity of his claims. 1-SER-067-069; 1-SER-117-119; 1-SER-180-181; 1-SER-169. On November 2, 2017, the day after the alleged incident, internal e-mails show Barrick had developed a list of 19 follow-up questions for Perez. 2-SER-335-337. The questions focused on concerns about Perez's failure to follow mandatory safety protocols—e.g., "Did you complete a post-op inspection?" "Was

there any damage noted to have occurred to the truck?"  Did you contact your supervisor or lead man when the incident occurred?"—and discrepancies in the timing of the incident, the onset of his pain, and his eventual report of the incident to management.  2-SER-336-337.  As part of Barrick's ongoing investigation of the incident, management met with Perez to discuss these unresolved questions on November 3, 2017.[5]  1-SER-173.  Per standard protocol, Barrick continued to investigate and document the details of the incident to determine if any additional actions or remedial safety measures were needed.  1-SER-173; 1-SER-165-168.

The following day, on November 4, 2017, a Barrick employee, Jesse Gonzalez, e-mailed management that, on November 2, a co-worker and close personal friend of Perez told Gonzalez that Perez "is faking a work related injury in order to take time off to work on personal business (fixing rental properties)."  2-SER-334.  Gonzalez wrote that, according to this individual, Perez had "used up all personal and vacation time . . . , so felt his only choice to get more time off was to fake an injury."  2-SER-334.  Gonzalez wrote that the individual shared this information on condition of anonymity.  2-SER-334.  Barrick did not determine the individual's identity until years later (in the course of this litigation), but the

---

[5] During the November 3 meeting, Perez refused to sit down, remarking that it was too painful to do so, and noticeably kept his left arm "close" to the side of his body.  1-SER-131-132.

anonymous report only added to suspicions about the implausibility of Perez's story. 1-SER-101-102.

The inability to corroborate Perez's story, together with this anonymous report, led Barrick to hire an investigator to confirm if Perez was fraudulently seeking medical leave not to recover from an alleged injury, but to perform physical labor on his rental properties. 1-SER-067-069; 1-SER-173; 2-SER-358-361. "Permitting outside activities to interfere with work" would generally violate Barrick's Standards of Conduct policy, which provides that Barrick will investigate all "potential violations" and issue disciplinary action, up to and including termination. 2-SER-304-313. An employee's falsification of a safety-related claim would be an affront to Barrick's robust safety program, which depends on communication and trust among the underground mining teams. *See* 1-SER-057-058.

Barrick's investigator began surveilling Perez's activities on November 7, 2017. 2-SER-343-356; Ex. 500-A. The following activities were captured on video, which was viewed by the jury at trial:[6]

---

[6] Pursuant to Circuit Rule 27-14, Barrick has filed, concurrently with this Respondent's Brief, a Motion to Transmit Video Evidence, specifically Barrick's Exhibits 500A-500E. Exhibits 500A-500E were admitted in the District Court through hard copy transmission, and are therefore not available on the Electronic Court Filing system.

- At 11:07 A.M. on November 7, 2017, the investigator filmed Perez driving through town, completing errands, and obtaining a meal from a food truck by reaching up with his left hand. Ex. 500-A [2:59-5:30]. The video evidence shows Perez walking briskly and hopping into his pick-up truck with no signs of difficulty or discomfort. Ex. 500-A [2:59-5:30]. Perez is seen leisurely talking on the phone while performing these tasks:



11:05AM     Tuesday, November 07, 2017

(Ex. 500-A [2:59-5:30]).

- At 11:13 A.M. on November 7, 2017, the investigator filmed Perez arriving at a casino, walking briskly through the parking lot, and throwing away his meal by reaching out his left arm to place it into a garbage bin. Ex. 500-A [5:33-6:35]. Perez is shown entering the

casino at 11:14 A.M., and gambling until 11:59 A.M. Ex. 500-A

[6:36]; Ex. 500-B [2:46-2:57]. The video shows that Perez sat at a

table and gambled for about 45 minutes (2-SER-343-356), with no

visible signs of discomfort:



(Ex. 500-A [6:36-20:59]; Ex. 500-B [0:01-2:46]).

- At 7:19 A.M. on November 9, 2017, Perez again visited the casino

  and gambled for over an hour, sitting and standing throughout this

  time with no apparent difficulty. 2-SER-343-356; Ex. 500-B [14:54-

  16:10].

- Later that day, on November 9 at 1:29 P.M., Perez performed repair

  work at his rental property. 2-SER-343-356; Ex. 500-C [4:27-10:20].

Although he told Dr. Black, on November 6, that it was difficult for him to walk, stand, sit, and "push up on his left arm/forearm" (ER_168), video evidence shows Perez repeatedly lifting and holding both arms above his head, including while using a power drill and other tools (2-SER-343-356; Ex. 500-C [4:48-6:34, 10:15-10:20]). Perez walked briskly while working outside, including while carrying tools and equipment. 2-SER-343-356; Ex. 500-C [6:55-7:55, 9:50-10:20]. He also bent over, picked up, and carried wood and metal materials without aid, and threw the materials into a pile with old carpet. 2-SER-343-356; Ex. 500-C [9:20-9:50]. These activities were conducted without any apparent discomfort or pain:



(Ex. 500-C [4:27-10:20]).

- Shortly thereafter, still on November 9, Perez returned to the casino and continued gambling from 3:45-7:16 P.M. 2-SER-343-356; Ex. 500-C [15:40-20:40]. Video evidence shows Perez sat comfortably at several slot machines while enjoying a beverage. Ex. 500-C [16:01-20:40]; Ex. 500-D [0:01-11:15].

- At 7:45 P.M. also on November 9, Perez performed additional repair work at his rental property. 2-SER-343-356; Ex. 500-D. During this time, Perez repeatedly lifted up his left arm and rested it on a shelf directly above his head for extended periods, again without any apparent difficulty or pain:









(Ex. 500-D [16:13-18:36]).  Perez also knelt down and operated a power tool, and removed a piece of trim from the wall with both hands.  Ex. 500-D [16:13-18:36].  Later, Perez hung drapes inside the property by reaching up above his head and operating power tools for an extended time:



8:03PM               Thursday, November 09, 2017

(Ex. 500-E [9:20-10:30]). The video shows Perez carrying additional tools and equipment throughout the house, often extending both arms above his head while doing so—all, again, without any hesitation or apparent discomfort. Ex. 500-D [16:13-20:11]; Ex. 500-E [0:01-10:30].

### D.    **Barrick Terminates Perez's Employment.**

Perez returned from leave as scheduled on November 20, 2017. 1-SER-182-184. During a meeting on November 20, a human resources representative, Joannie Jarvis,[7] advised Perez that "a claim had been made by a fellow co-worker

---

[7] By the time of trial, Jarvis had not been employed with Barrick for approximately three years. 1-SER-171:6-14.

18

that he was faking his injury, and, therefore, [Barrick] had him investigated by a work comp investigator . . . for a period of days. . . . And that investigation had showed that he was, in fact, working on his house. He had been doing some heavy lifting, he was working with tools. And it showed that there were inconsistencies within his story." 1-SER-183-184. In other words, Barrick provided Perez an opportunity to explain why, during his leave, he appeared to be working on his rental property and performing activities he told Dr. Black were incredibly painful and impossible for him to perform. 1-SER-189-191. Barrick asked Perez, "point blank, what can you tell us about this?" and "if he had anything to refute what the investigation appeared to be." 1-SER-183-184. Perez responded: "I have nothing to say." 1-SER-183-184. With Perez refusing, or unable, to explain how he could be performing the type of activities he had told Dr. Black that he could not perform, Barrick concluded that Perez had fraudulently reported an injury to obtain leave. Accordingly, Barrick terminated Perez's employment on November 20, 2017. 1-SER-189-191.

### E. **Perez Sues Barrick For FMLA Interference And Wrongful Discharge In Retaliation For Filing A Workers' Compensation Claim.**

In February 2019, Perez filed the instant action alleging civil claims in the United States District Court for the District of Nevada (Reno). ER_265-266. In the Complaint, Perez claimed Barrick violated the FMLA by failing to reinstate

Perez to his prior position after his alleged medical leave of absence. 2-SER-393-395. Perez also alleged Barrick unlawfully terminated his employment in violation of strong public policy of the state of Nevada—specifically, in retaliation for filing a workers' compensation claim. 2-SER-393-395; 2-SER-397-398. Perez's Complaint made no mention of Barrick's investigation, but alleged Barrick's proffered basis for his termination—that he violated company policy—was false and pretextual. 2-SER-394. The Complaint also did not reference any alleged failure to abide by any of the requirements of Nevada's separate workers' compensation code or the state "Spotters" statute. *See* 2-SER-392-399.

### F. During A Five-Day Jury Trial, Perez Fails To Raise Any Arguments Regarding The Sufficiency Of The Evidence To Support His Claims.

The case proceeded to a jury trial starting November 7, 2022. ER_276. At the close of all evidence, Perez argued only that Barrick did not present sufficient evidence that Perez failed to mitigate his alleged damages. 2-SER-291. Perez asked the District Court to enter judgment as a matter of law that Perez sufficiently mitigated his damages. 2-SER-291. The entirety of Perez's only Rule 50(a) motion was as follows:

> [Perez's Counsel]: Your Honor, I'd like to make a brief record. I think I know where the Court is going, but I'd like a brief on the 50(A) motion concerning the affirmative defense of mitigation of damages.
>
> THE COURT: Sure.

20

[Perez's Counsel]: Your Honor, we believe that there has not been any appropriate evidence that would satisfy the elements of the mitigation of damages from defense. Specifically, the availability of alternate jobs. And, most importantly, the amount of money that would be—that Mr. Perez would be expected to earn in those alternative jobs. The only evidence that we have heard is the evidence that cannot be considered for the truth of the matter asserted, the classified advertisements, so the effect it had on Mr. Perez, but not as to whether or not those jobs even existed or for any amount of money. <u>And for that reason, we would argue that they should not be allowed to submit a jury instruction concerning mitigation of damages and that the jury should not consider any alternate work to be a subtraction from the damages that Mr. Perez should be awarded.</u>

THE COURT: I will deny the motion.

2-SER-291 (emphasis added).

Perez failed to advance any other arguments or motions regarding the sufficiency of the evidence, before or after the jury's verdict in this case. Perez likewise did not move for a new trial in the District Court.

## G. <u>The Jury Finds Perez Did Not Suffer A Serious Health Condition And That Barrick Did Not Retaliate Against Him.</u>

On November 11, 2022, the jury returned a verdict for Barrick on both of Perez's claims. ER_006-007.

On the FMLA interference claim, the jury was asked: "Has Tomas shown by a preponderance of the evidence that he suffered a serious health condition that

21

prevented him from performing his job?" ER_006. The jury responded: "No."[8] ER_006.

On the common law retaliatory discharge claim, the jury was asked: "Has Tomas shown by a preponderance of the evidence that Barrick terminated his employment because he filed a workers' compensation claim?" ER_007. The jury responded: "No." ER_007.

Because the jury found in Barrick's favor on these questions, the verdict form directed no further action. ER_006-007. The District Court entered judgment on the jury's verdict on December 13, 2022. ER_278. Perez did not file *any* post-trial motions following the jury's verdict or the Court's entry of judgment. ER_278.

## V.  <u>SUMMARY OF ARGUMENT</u>

This case is unusual because Perez made no post-trial motions. Perez's failure alone dooms his appeal. Indeed, Perez's failure to pursue any of his arguments pursuant to Rule 50(a) or (b) deprives this Court of *any* authority to consider his request for judgment as a matter of law, and most critically, mandates that this Court reject Perez's request for a new trial based on sufficiency of the

---

[8] If the jury had instead responded "Yes," it would have proceeded to Question 2, which asked: "Has Barrick demonstrated by a preponderance of the evidence that it terminated Tomas for violating Barrick's company policies for employees and not for taking FMLA leave?" ER_006. Because the jury responded "No" to Question 1, it did not proceed to Question 2. ER_006.

evidence. In addition, by failing to move for a new trial under Rule 59, Perez waived his right to argue he is entitled to a new trial based on purported instructional errors. Accordingly, Perez waived his ability to attack the verdict on the very grounds he raises in his Opening Brief. On this ground alone, the Court should affirm the judgment of the District Court.

Even setting the waiver problem aside, Perez's arguments also fail on the merits. The jury found Perez did not have a "serious health condition" that would entitle him to the protections of the FMLA. The jury also concluded Perez was not fired in retaliation for filing a workers' compensation claim. There is overwhelming evidence in the record—certainly more than substantial evidence— to support each of these findings. The evidence shows Perez lied about sustaining an injury so he could take time off of work to focus on his outside business activities. This violated Barrick's Standards of Conduct policy, and was a terminable offense. Perez was asked about the fraud, and did not deny it. During the trial itself, Perez still did not deny the fraud, and did not deny that he was placed on notice of the allegations and given an opportunity to respond.

Indeed, there is not—and never has been—*any* evidence to corroborate Perez's injury other than his own narrative and subjective complaints of pain— evidence the jury was free to reject. Perez did not present a single other piece of evidence, or witness testimony, that would corroborate the existence of his injury

or his workplace accident. Moreover, the record is replete with evidence that Perez had been dishonest and concocted a scheme to create additional vacation days. Given the inherently dangerous nature of underground mining and the immediate and fulsome response Barrick devotes to any safety-related claims, Barrick takes this type of fraud seriously and justifiably seeks to prevent abuse. The jury was well within its authority to consider Barrick's evidence and reject Perez's uncorroborated health claims.

Perez asserts that Barrick was required, as a matter of law, to seek a medical certification regarding Perez's health condition before questioning it. Not only did Perez waive this attack by not bringing it to the trial court, but the right to a medical re-certification, or a second or third medical opinion, does not apply to a situation involving fraud; and, in any event, an employer has no obligation to seek a medical re-certification before declining to reinstate an employee on FMLA leave. Rather, the FMLA allows, but does not mandate, re-certification if the employer doubts the employee has a serious health condition subject to protection by the FMLA.

Moreover, whether Barrick obtained a second opinion misses the point. There is substantial evidence in the record that, even if Perez were entitled to the protections of the FMLA, Barrick fired him for fraudulently obtaining leave to pursue outside business activities, and not as a result of any legally protected

24

conduct. In other words, the record contains substantial evidence in support of numerous grounds that would support the jury's verdict.

Similarly, the District Court's refusal to instruct on the various requirements and legal standards applicable to Nevada's workers' compensation system and the state Spotters statute did not constitute reversible error—presuming Perez can overcome his waiver problem. Questions such as the compensability or administration of Perez's claim under Nevada's separate workers' compensation system have no bearing on this case and were not properly before the jury. And Perez did not, and *could not have*, sought any relief pursuant to Nevada's Spotters statute, which does not allow for any private right of action. The jury determined Perez was not fired in retaliation for filing a workers' compensation claim. The District Court correctly refused to instruct on state law and workers' compensation rules that are not applicable to Perez's claims.

In the end, Perez cannot overturn the jury's verdict. Perez waived his grounds for attack; and regardless, the verdict is well-supported by numerous grounds in the record, and was reached based on a correct application of the law applicable to Perez's claims. The verdict must be affirmed.

## VI.  STANDARD OF REVIEW

### A.  Even If Perez Can Overcome Waiver, The Court Must Still Affirm The Jury's Verdict Because It Is Supported By Substantial Evidence In The Record.

The heart of the jury's finding was its conclusion that Perez did not have a serious health condition as defined by the FMLA.  Perez, recognizing that the jury's finding is fatal to his FMLA claim, argues "the jury's verdict is plain error and unsupported by substantial evidence."  Opening Brief at 10.  As discussed *infra*, Perez waived this attack.  However, if Perez somehow could overcome his waiver, the jury's verdict must still be affirmed based on substantial evidence in the record.  The Court "review[s] a jury verdict to determine whether it is supported by substantial evidence," and may only "overturn a jury's verdict in those rare cases where the evidence 'permits only a conclusion contrary to [that] verdict.'"  *Barnard v. Theobald,* 721 F.3d 1069, 1076 (9th Cir. 2013).  The evidentiary record provides strong support for the jury's determination that Perez did not have a "serious health condition," and that he was not terminated in retaliation for filing a workers' compensation claim.

### B.  Even If Perez Can Overcome Waiver, The Verdict Must Be Affirmed Because Perez Cannot Demonstrate Any Prejudicial Error.

With regard to Perez's challenge to the jury instructions, again, Perez waived his attack by not seeking a new trial below.  If Perez had not waived his attack, he would need to demonstrate that the erroneous instructions constituted

26

*prejudicial error.  See Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (even incorrect, misleading, or incomplete jury instructions do not warrant reversal if the error was "harmless").  Prejudicial error requires more than merely showing that an instruction, "taken in isolation, does not fully state the applicable law." *Swinton v. Potomac Corp.*, 270 F.3d 794, 807 (9th Cir. 2001).  "Rather, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered," *id.* (internal quotations and citations omitted), and this error <u>more likely than not caused the jury to reach a different verdict</u>, *Gantt v. City of L.A.*, 717 F.3d 702, 707 (9th Cir. 2013).  Here, the District Court correctly declined to instruct on irrelevant legal standards and requirements imposed by irrelevant state laws, including Nevada's separate workers' compensation system, and correctly refused Perez's proposed instruction that an employer is *required* to seek a medical re-certification before denying reinstatement under the FMLA.  Perez cannot demonstrate error—and certainly not prejudicial error—on any of the District Court's instructional rulings.

## VII. <u>PEREZ WAIVED THE RIGHT TO CHALLENGE THE JURY'S FINDING THAT HE DID NOT HAVE A SERIOUS HEALTH CONDITION.</u>

Perez asserts that the Court should overturn the jury's verdict because "there is no substantial evidence to support the verdict insofar as the jury made a finding that [Perez] did **not** have a serious health condition that prevented him from doing

27

his job." Opening Brief at 13. He asks the Court to "remand the case for a new trial with instructions to the District Court to either rule on the issue as a matter of law or to instruct the jury more fully that it must determine that [Perez] ***did have a serious health condition*** under the FMLA based on the undisputed medical evidence in the case." Opening Brief at 17. Perez relatedly argues he is entitled to judgment as a matter of law that "the certification provided by Dr. Black . . . is 'sufficient' and must be accepted." Opening Brief at 27. On this point, Perez also contends that: "This court should hold that the failure to obtain a 2nd opinion or seek recertification under the provisions of 29 U.S.C. § 2613 forecloses an employer from challenging the certification in litigation. With that law clarified, this matter should be remanded for a new trial so that the jury can be instructed that it must accept Dr. Black's certification." Opening Brief at 29.

The problem for Perez is that he *waived these arguments*. He did not raise them below in any kind of motion to the District Court. Indeed, in the District Court, Perez advanced a single argument for judgment as a matter of law, at the close of all evidence before the case was submitted to the jury. 2-SER-291. Perez asked the Court to find that, as a matter of law, Perez sufficiently mitigated his damages. 2-SER-291. At no point during the trial did Perez request judgment as a matter of law as to any issues other than his mitigation of damages. Critically, Perez failed to renew any arguments by filing a motion under Rule 50(b) after the

jury's verdict. Perez, in fact, failed to file any post-trial motions at all. ER_276-279. Perez's omission is fatal.

In fact, Perez's Opening Brief totally ignores binding Supreme Court precedent that <u>entirely forecloses</u> most of his arguments on appeal. In *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, *supra*, the respondent in a patent action, ConAgra, moved for judgment as a matter of law regarding sufficiency of the evidence before the jury's verdict, but failed to renew its motion under Rule 50(b), and failed to request a new trial under Rule 59. 546 U.S. at 396. "The Court of Appeals nevertheless proceeded to review the sufficiency of the evidence and, upon a finding that the evidence was insufficient, remanded the case for a new trial." *Id.* The Supreme Court reversed. *Id.*

The Supreme Court held that a party's "failure to comply with Rule 50(b) *forecloses its challenge to the sufficiency of the evidence*"—as "a party may only pursue on appeal a particular avenue of relief available under Rule 50(b), namely the entry of judgment or a new trial, when that party has complied with the Rule's filing requirements by requesting that particular relief below." *Id.* at 402, 404 (emphasis added).

As this Court has repeatedly explained, "*Unitherm* precludes even plain error review when a party fails to file a Rule 50(b) motion," which is "an absolute prerequisite" to any appeal requesting a new trial or judgment as a matter of law

29

based on insufficiency of the evidence. *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007); *see also Williams*, 895 F.3d at 1134 (noting that, following *Unitherm*, this Court "overruled our 'prior decisions permit[ing] a discretionary plain error review" of arguments in a Rule 50(a) motion that the party failed to renew under Rule 50(b)); *Brown v. Cty. of San Bernardino*, 840 Fed. Appx. 297, 298 (9th Cir. 2021) ("Brown's failure to make the appropriate motions under Federal Rules of Civil Procedure 50 and 59 precludes this court's review.").

This Court cannot review Perez's arguments that he is entitled to judgment as a matter of law or a new trial regarding the existence of his "serious health condition" or the sufficiency of Dr. Black's medical certification. Perez failed to advance these arguments under Rule 50(a). He also declined to advance these arguments through a post-verdict motion under Rule 50(b). This Court is bound by Supreme Court precedent precluding review of these issues in the first instance on appeal.[9] *Unitherm*, 546 U.S. at 396; *see also Nitco*, 491 F.3d at 1089; *Williams*, 895 F.3d at 1134.[10] Perez's wholesale failure to abide by the procedural

---

[9] Perez has no other procedural mechanism to try to advance his arguments on appeal. For instance, his arguments are not "purely legal" issues preserved for review through a failed motion for summary judgment. *See Dupree v. Younger*, 143 S. Ct. 1382, 1387 (2023). Perez never moved for summary judgment or summary adjudication in this case. ER_266-79.

[10] In his Opening Brief, Perez cites a 2009 decision of this Court, *EEOC v. Go Daddy Software, Inc*., 581 F.3d 951 (9th Cir. 2009), for the proposition that, in this

requirements of Rule 50 by filing <u>any post-trial motions at all</u> precludes this

Court's review of Perez's requests for judgment as a matter of law or a new trial

based on sufficiency of the evidence.

## VIII. <u>PEREZ WAIVED THE RIGHT TO REQUEST A NEW TRIAL BASED ON PURPORTED INSTRUCTIONAL ERRORS.</u>

Perez's remaining arguments, pertaining to purported instructional errors,

fare no better. As an initial matter, this Court should decline to review Perez's

arguments regarding alleged instructional errors because he declined to advance

these arguments in a post-trial motion in the Court below. ER_276-279. This

---

case, "[t]he jury's verdict should be overturned if it amounts to plain error or there is a lack of substantial evidence to support the verdict." Opening Brief at 12. *Go Daddy Software* is inapposite. In *Go Daddy*, the defendant-appellant, Go Daddy, orally moved under Rule 50(a) for judgment as a matter of law on numerous grounds, most of which focused on the lack of sufficient evidence to support the employee's discrimination claims. *Go Daddy*, 581 F.3d at 960. As its sole argument for judgment as a matter of law on the retaliation claim, Go Daddy argued there was insufficient evidence that its human resources ("HR") representative informed the decision-makers in the alleged employment action about the employee's protected activity. *Id.* Go Daddy did not argue, under Rule 50(a), that there was no "protected activity" as a matter of law, or that there was insufficient evidence the employment decision occurred after a protected activity. *Id.* The jury returned a defense verdict on the discrimination claims, but found Go Daddy liable for retaliation. *Id.* After the verdict, Go Daddy filed a renewed motion for judgment as a matter of law under Rule 50(b), in which it honed more specific arguments with respect to the retaliation claim. *Id.* at 962. This Court explained that, because the Rule 50(b) argument was arguably encompassed, as a logical extension, of Go Daddy's pre-verdict motion for judgment as a matter of law, the Court applied the "substantial evidence standard." *Id.* at 963. Of course, here, Go Daddy's reasoning has no application because Perez not only failed to advance any of his arguments in his Rule 50(a) motion before the jury's verdict; but, more incredibly, he failed to file any post-trial motions at all.

Court has held that, where an appellant fails to move for a new trial based on a purported instructional error under Rule 59, the Court may "ignore this issue entirely" and decline review. *Zhang v. Am. Gem. Seafoods, Inc.*, 339 F.3d 1020, 1034-35 (9th Cir. 2003). On the other hand, the Court may grant review, in the Court's discretion, if the argument concerns a "purely legal issue" and the opposing party will not be "prejudiced," i.e., if the opposing party "is in the same position as he would have been had this issue been raised in a Rule 59 motion for a new trial." *Id.* at 1035.

The Court should decline discretionary review in this case, as the applicability of Perez's proposed instructions regarding Nevada's "Spotters" statute, the workers' compensation code, and an employer's right to seek a medical re-certification are not "purely legal" issues. This Court cannot weigh the relevance of any of Perez's proposed instructions without considering the claims and evidence that were presented to the jury over the course of a five-day trial. It is for this reason that "[r]eview of the merits of a Rule 59 motion for a new trial is confided to the discretion of the district court." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010). The Court should decline to review Perez's arguments that he is entitled to a new trial based on purported instructional errors.

Perez fails to show that he is even entitled to *pursue* his arguments on appeal, let alone that the jury's verdict should be reversed. The judgment must be affirmed.

### IX. EVEN IF PEREZ DID NOT WAIVE HIS ABILITY TO ATTACK THE JUDGMENT, THE COURT SHOULD AFFIRM BECAUSE THE JUDGMENT IS BASED UPON SUBSTANTIAL EVIDENCE AND DID NOT INVOLVE PREJUDICIAL ERROR.

#### A. Overwhelming Evidence Supports The Jury's Finding That Perez Did Not Have A "Serious Health Condition" That Would Entitle Him To The Protections Of The FMLA.

Even if the Court decides, in spite of *Unitherm*, to consider Perez's arguments on appeal, it should reject them. With regard to the jury's first finding—that Perez did not have a "serious health condition that prevented him from performing his job," ER_006, this determination finds strong support in the trial record.

To prove entitlement to FMLA leave, Perez was required to show both that he "suffered from a serious health condition," and that this condition "made him unable to perform the functions of his position." *Nagy v. Western Alliance Bank*, No. 2:16–CV–2095 JCM (GWF), 2018 WL 3094874, at *3 (D. Nev. June 22, 2018); *see also* 29 U.S.C. § 2612(a)(1)(D). Perez would have had a "serious health condition" if he had an "injury" requiring "continuing treatment by a health care provider." 29 U.S.C. § 2611. As relevant here, "continuing treatment," in turn, requires: (1) "[a] period of incapacity of more than three consecutive, full calendar

days," and (2) treatment by a health care provider two or more times within the first 30 days of the first day of incapacity. 29 C.F.R. § 825.115(a)(1). "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.* § 825.113(b).

Here, there is ample evidence in the record for the jury to have found that Perez did not suffer an injury that made him unable to perform the functions of his job.

  **1.**  **The Jury Considered Video Evidence Showing That Perez Comfortably Performed Tasks He Told Dr. Black Caused Severe Pain As A Result Of His Injury; And, When Confronted With This Evidence Upon His Return From Leave, Perez Stated He Had "Nothing To Say."**

On November 6, 2017, Perez told Dr. Black he found it too painful being in a seated position, and therefore could not drive the underground mine haul truck. ER_167-170; ER_252:9-ER_254:12. Perez also stated it was incredibly painful to "push up" with his left arm. ER_167-170. Dr. Black prescribed an additional two weeks off of work in response to these purely subjective complaints. ER_167-170.

Yet, *the following day*, on November 7, 2017, Perez spent almost an hour sitting and gambling at a casino. 2-SER-343-356; Ex. 500-A. The video evidence demonstrated Perez did not find it too painful to extend his left arm while readily and repeatedly climbing in and out of his lifted pickup truck, and had no difficulty

sitting for hours on end while gambling at a casino and even enjoying a beverage. ER_167-170; ER_252:9-ER_254:12. Throughout that day, Perez also performed errands and other activities, while walking at a brisk pace and reaching up with his left arm at various points throughout the day—all, again, activities which he had told Dr. Black, *the day prior*, were extremely difficult and painful for him to perform, justifying a two-week extension of his leave. 2-SER-314-317; Ex. 500-A.

On November 9, 2017, Perez again spent hours gambling at the casino, comfortably sitting and standing with no apparent difficulty. 2-SER-343-356; Ex. 500-B. Perez also spent hours performing repair work during multiple trips to his rental property. 2-SER-343-356; Exs. 500-C, 500-D, 500-E. The surveillance footage shows Perez raising both arms above his head while operating a power drill and other tools for extended periods of time, and carrying and utilizing various other materials, tools, and equipment outside his rental property. 2-SER-343-356; Ex. 500-C. The footage showed Perez returning to the property late in the day and performing other renovations inside, including extending both arms above his head while operating a power drill and repeatedly lifting and resting his left arm on a shelf directly above his head for an extended time. Ex. 500-D [16:13-20:11]; Ex. 500-E [0:01-10:30].

When confronted with this evidence upon his return from leave, Perez offered *no* explanation, though he was explicitly asked for his side of the story. 1-

35

SER-183-184.  Instead, Perez simply remarked that he had "nothing to say."  1-SER-183-184.  At trial, Perez generically stated he did not recall the details of this November 20 discussion.[11]  2-SER-262-263.  However, at trial, Perez *did* recall driving around town, gambling at a casino, and working on his rental property during leave, though Dr. Black had ordered him completely off of work.  2-SER-238-240; 2-SER-252.  And Perez was able to confirm that, on the day of his alleged injury, he "only had four hours of vacation left and four hours of personal time left," which he wanted to "save" for the Thanksgiving and Christmas holidays.  2-SER-242-243.

Other evidence also supported Barrick's narrative at trial.  Several witnesses testified regarding Barrick's safety-related bonus program.  *See, e.g.*, 1-SER-058-

---

[11] In the Opening Brief—without citation to any evidence or legal authority—Perez claims the surveillance video "was never shown to [Perez] so he was never given a chance to explain it."  Opening Brief at 8.  At trial, neither party claimed Perez was invited to, or in fact did, watch the surveillance video during the November 20 meeting.  Instead, the testimony confirmed Perez was told about the investigation and what the surveillance video showed, and was asked for an explanation of why, during leave, he appeared to have spent hours performing manual labor on his rental property, gambling at a casino, and conducting various other errands throughout town.  1-SER-183-184.  In response, Perez simply indicated he had "nothing to say."  1-SER-184-184.  He did not ask to view the surveillance video, and did not view it—but he was certainly given an opportunity to explain what was shown in the video, which he declined to do.  1-SER-183-184.  Perez was specifically asked about this while under oath at trial, but claimed he did not recall what was discussed during the meeting.  2-SER-262-263.

059; 2-SER-281-282. The program allowed Barrick's mining employees, including Perez, to receive a monthly bonus tied to the number of safety-related incidents reported for the group. 1-SER-058-059. If only one incident was reported in a given month, the group's bonus was reduced by 15%. 1-SER-058-059. Two safety incidents in one month caused a "complete loss of the bonus" for the mining employees.[12] 1-SER-058-059. A co-worker testified that, earlier in the same shift of his alleged accident, Perez had opined that, if an injury occurred at that time, it would be "basically like a free injury" because the group had already lost the bonus by incurring two safety-related incidents that month. 2-SER-281-282.

In other words, at trial, Perez himself confirmed the accuracy of Barrick's evidence that he was performing physical labor during leave, including for a side business operating his rental properties, and also confirmed Perez had no other means of taking vacation hours within the confines of company policy. At the same time, the jury saw that Perez did not present counter-evidence through any other witness testimony—from family, friends, co-workers, or indeed even from himself—corroborating his need for leave. This was despite the fact Perez testified

---

[12] Conversely, failure to report a safety incident would cause a miner to "lose up to six months of a bonus"—an exception meant to ensure immediate reporting, per company policy. 1-SER-060-061.

repeatedly on the stand about his familial relationships, including his wife with whom he owned a convenience store where Perez had been working since his discharge from Barrick. 2-SER-248-249. The jury never heard from Perez's wife or anyone else who could corroborate his version of events.

Under these circumstances, there is ample evidence in the record to support the jury's determination that Perez did not have a serious health condition that prevented him from performing his job. Perez does not present even a colorable basis for the Court to consider reversing the jury's well-founded verdict in this case.[13]

---

[13] In the Opening Brief, Perez also presents a somewhat half-hearted and undeveloped argument regarding the impropriety of the jury's verdict on the common law wrongful discharge claim. *See, e.g.*, Opening Brief at 12 (requesting, for the first time on appeal, a new trial "for both the FMLA interference claim and for the Nevada common law wrongful discharge claim"). To the extent Perez seeks to reverse the jury's verdict on the wrongful discharge claim, Barrick's evidence of fraud similarly precludes such a result. Nevada recognizes only a "narrow" wrongful discharge claim, under which the "plaintiff must demonstrate that his protected conduct was the proximate cause of his discharge." *O'Brien v. R.C. Willey Home Furnishings*, 748 Fed. Appx. 721, 724 (9th Cir. 2018). "A retaliatory discharge claim *cannot be based upon a mixed motives theory*." *Id.* (emphasis added). For this reason, because there was ample evidence in the record that Perez fraudulently obtained leave (and that this was a fire-able offense) and did not have the serious health condition he claimed, this *alone* supports a verdict for Barrick on Perez's wrongful discharge claim.

### 2. Dr. Black Testified, As A Lay Witness, That His Treatment Plan Was Based Entirely On Perez's Subjective Complaints Of Pain.

In the Opening Brief, Perez makes the astonishing claim that: "It is indisputable medical fact that muscle spasm and fasciculations are involuntary conditions that cannot be faked by a human being." Opening Brief at 6; *see also id.* at 8, 10, 13, 24, 39. Perez claims Dr. Black's testimony at trial confirmed this "indisputable medical fact." Opening Brief at 39. But Perez's own Excerpts of Record belie this claim.

In fact, Perez did not offer any expert testimony whatsoever to suggest that muscle spasms or fasciculations are "involuntary conditions that cannot be faked." As the District Court explained, Dr. Black testified "not as an expert," but strictly "as a fact witness of what he encountered back in 2017." ER_203:18-22. Black was allowed to testify as to "the opinions that he gave," "why he gave those opinions," and "challenges to those opinions." ER_203:22-24. In other words, Black was allowed to testify as to what occurred during his appointments with Perez in November 2017, but *not* to provide present medical opinions "within a certain degree of certainty." ER_203:25-ER_204:2. Black's testimony could not, and did not, provide evidence that Perez's purported medical conditions were incapable of being "faked." *See* Fed. R. Evid. 701(c) (indicating a lay witness is not competent to provide opinion testimony that is "based on scientific, technical,

or other specialized knowledge within the scope of Rule 702"). The jury was free to conclude that Perez's injuries were faked, a determination that again finds strong support in the evidentiary record.

Indeed, Black's testimony at trial confirmed his treatment plan was based *entirely* on Perez's subjective complaints of pain. During his appointment with Perez on November 1, 2017, Black testified Perez told him Perez was "cold and shaking at the time of impact" of the mine haul truck against the wall. ER_245:18-20. Upon physically examining Perez, Black was unable to find "any bruising, discoloration[,] . . . lesion, rashing, abrasions," or any other pathologies apparent from the exterior of his skin. ER_247:18-23. Black testified he performed X-rays on Perez, which were normal, showing no fractures. ER_249:19-22; *see* ER_195. Black found Perez did not have any cardiopulmonary abnormalities, meaning his heart and lungs were functioning normally. ER_249:25-ER_250:5. Black clarified that, although his "Progress Note" from November 1, 2017 indicated Perez was "focally tender" to physical touch in the "mid to lower lateral ribs" on his left side, this determination would have been based entirely on Perez's "subjective responses" to Black's questions. ER_247:23-ER_248:8; *see* ER_164. In other words, Black testified he had no way of confirming whether Perez was truly tender on his left side, as Perez claimed. ER_248:2-8. However, based on Perez's

40

description of his injury and pain, Black diagnosed him with a left chest wall contusion on November 1. ER_164.

During his follow-up appointment with Dr. Black on November 6, 2017, Perez was additionally diagnosed with muscle spasms. ER_170. Dr. Black's findings were, again, based not on any objective medical tests, such as X-ray results or observing Perez's range of motion with his left arm, but instead based *solely* on Perez's subjective complaints regarding his pain. ER_250:6-ER_251:19, ER_252:25-ER_254:12. Although typically Black would expect to feel "a knot in the muscle" if someone is experiencing muscle spasms, Black confirmed his Progress Notes did not indicate the presence of a detectable knot. ER_255:18-ER_256:6. Instead, Black determined "there could be spasm" because Black had observed "some twitching in the muscle," and again, based on Perez's subjective description of his pain. ER_256:7-21. This condition was not noted during Perez's initial examination on November 1, and was only detected in response to Perez's additional complaints on November 6. ER_256:22-ER_257:1. Specifically, on November 6, Perez told Black he "had difficulty getting in and out of a chair," "had difficulty sitting and standing," "could not roll over on to his left side without pain," and had "pain when he attempt[ed] to push up on his left arm" (which meant "his chest [was] hurting" while "trying to push up or roll over"). ER_252:9-ER_253:23; *see* ER_168.

41

At trial, Black indicated he ordered Perez completely off of work because he believed he should not be driving; although, otherwise, the recommendation was not necessarily based on the nature of Perez's specific role as an underground miner. ER_237:25-ER_238:11. Black explained the off-work order accounted for the fact that, in Perez's job, there were no alternative or light-duty functions to consider for temporary reassignment. ER_238:4-11. Black suggested that if, as an underground miner, Perez could have been reassigned to a desk job or some other function that was "not driving"—and assuming he "*had a way to get to work* and could function" in some other light-duty role—then he might have considered such a light-duty assignment instead of ordering him completely off of work. ER_238:4-11 (emphasis added).

Black testified he was unaware of Perez's activities during leave. ER_254:17-ER_255:8. Perez did not tell Dr. Black he had been "sitting for hours in a casino," driving about town, or working on his rental properties for extended periods—including using a drill above his head and "carrying drywall and other construction materials." ER_254:17-ER_255:8. Perez even declined to share this information during his final appointment with Dr. Black on November 16, at which time Perez "negotiated . . . two extra days" of leave "because of pain that he [said] that he was feeling." ER_257:22-ER_258:7. Dr. Black explained that, if Perez had been "able to do that kind of work" on his rental properties and felt he could

42

return to work, Perez could have called Dr. Black with that information, which Black would normally expect a patient to do. ER_255:9-17.

Black was also asked if, in his opinion as of November 2017, "[d]oing handyman work is certainly different than doing 12 hours of driving in an underground mine haul truck." ER_239:14-15; ER_239:21-22. Dr. Black responded: "I don't know. Depends on the amount of work that is done." ER_239:16-17. At most, Dr. Black's testimony suggests he was concerned that Perez would be unable to drive—*at all*—while taking muscle relaxants. ER_258:5-20. This included driving a mine haul truck or driving his pickup truck around town. ER_238:4-11. Black's trial testimony is hardly the smoking gun Perez claims, and does not touch on Barrick's other evidence that Perez faked his injury to fraudulently obtain leave.

Although Perez entirely waived the right to this Court's review of the evidence at trial, the record contains ample evidence to support the jury's finding that Perez did not have a "serious health condition" under the FMLA. At a minimum, the evidence at trial showed Perez did not have an injury that prevented him from performing his job. The jury properly weighed the evidence and applied the law in reaching this determination. The verdict must be affirmed.

### 3. Even If The Jury Had Found A "Serious Health Condition," Substantial Evidence Supports Barrick's Decision To Deny Perez Reinstatement.

The jury correctly found that, based on the evidence at trial, Perez did not have a "serious health condition" under the FMLA. However, even if Perez were entitled to the protections of the FMLA, the verdict is also supported based on other grounds in the record. In other words, even if the jury had answered "Yes" to Question 1 of Perez's FMLA claim—finding he had a serious health condition—substantial evidence in the record would have supported the verdict based on Question 2, as "Barrick demonstrated by a preponderance of the evidence that it terminated [Perez] for violating Barrick's company policies for employees and not for taking FMLA leave." ER_006.

The FMLA provides that where an employer "*has reason to doubt the validity* of the certification provided" in support of an employee's request for leave, "the employer *may* require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider." 29 U.S.C. § 2613(c)(1) (emphasis added). If the second opinion conflicts with the original certification, the employer may resolve the conflict by requiring, at the employer's expense, "that the employee obtain the opinion of a third health care provider." *Id.* § 2613(d)(1). In the Opening Brief, Perez appears to suggest that an employer's

right, under section 2613(c) and (d), to require a second or even third medical

opinion somehow applies to Barrick's evidence of fraud. Opening Brief at 8.

However, the FMLA also provides that an "eligible employee who takes

leave under section 102 [29 USCS § 2612] *for the intended purpose of the leave*

shall be entitled, on return from such leave," to be restored to the same or an

equivalent position. 29 U.S.C. § 2614 (emphasis added). The regulations clarify

that "[a]n employee who fraudulently obtains FMLA leave from an employer *is*

*not protected by FMLA's job restoration or maintenance of health benefits*

*provisions*." 29 C.F.R. § 825.216(d) (emphasis added). An employer may refuse

to reinstate an employee who fraudulently obtains leave to pursue "outside or

supplemental employment"—even if obtaining such outside employment would

not otherwise violate the employer's policies.[14] *Id.* § 825.216(d)-(e). The

regulations do not contemplate any second or third medical opinions or medical re-

certifications to verify employee fraud, or to verify that an employee violated

company policy by obtaining leave to pursue outside employment. *Id.*

---

[14] Although this provision applies regardless of the employer's policies, here, Barrick's written "Standards of Conduct" policy specifically forbids "[p]ermitting outside activities to interfere with work." 2-SER-307. The policy notes Barrick investigates "all potential violations," and that violations "result in discipline up to and including termination of employment." 2-SER-306-307.

Yet, without citing to any legal authority, Perez claims Barrick fired him based on surveillance video that "was never shown to Dr. Black to see if the doctor would recertify [Perez] as being able to return to work at an earlier time," and "was never shown to any other doctor for another medical opinion, either." Opening Brief at 8. Perez's Opening Brief is largely premised on this legally unsound theory that Barrick should have sought a medical opinion on Barrick's evidence of fraud. Perez's argument is doubly flawed. First, Perez reads into section 2613(c) and (d) mandatory language which is not there. But second, and more critically, Perez incorrectly assumes that section 2613—the recertification provision—applies to the surveillance video at all. Perez entirely glosses over the critical distinction between an employer's right to seek medical recertification (under section 2613), and an employer's right to deny reinstatement to an employee who either fraudulently obtained leave, or violated company policy by obtaining leave to pursue outside employment (under 29 C.F.R. § 825.216(d)-(e)). The FMLA does not provide the employer a right—and, much less, any *obligation*—to request a doctor's opinion regarding evidence of fraud or policy violations before denying reinstatement. *See id.*

On this point, Perez relies heavily on a 1998 decision from the Northern District of California, *Sims v. Alameda-Contra Costa Transit District*, 2 F. Supp. 2d 1253 (N.D. Cal. 1998). In *Sims*, the plaintiff took time off from work, at his

doctor's recommendation, due to a back problem. *Id.* at 1255. The plaintiff

submitted medical documentation, from his physician, in support of the leave. *Id.*

at 1256. The plaintiff's supervisors admitted they were aware of his back issue

even before the plaintiff took leave. *Id.* at 1255. It was undisputed that the health

problem itself existed—but the employer nonetheless unilaterally concluded the

condition was not "serious" enough to warrant FMLA protection. *Id.* at 1256. The

employer counted the plaintiff's leave as "unexcused," and issued disciplinary

action that eventually led to his termination (in conjunction with other unexcused

absences). *Id.* In ruling on cross-motions for summary judgment, the District

Court found that, by failing to challenge the sufficiency of his initial certification

or to seek a second or third medical opinion, the employer had waived the right to

argue the plaintiff's health condition was not serious enough to qualify for FMLA

leave. *Id.*

Even assuming this Court finds *Sims*'s reasoning persuasive, both the

procedural posture and factual background render the case immediately

distinguishable. *Sims* concerned a summary judgment motion in a case that

implicated the very scenario apparently contemplated by section 2613(c) and (d).

*Id.* In *Sims*, the employer received a medical certification purportedly establishing

the employee's right to FMLA leave. *Id.* at 1256. The employer was aware of the

plaintiff's medical problem even before the request for leave; there was no dispute

47

that the medical condition existed, or that the request for leave was not fraudulently made to pursue outside employment. *Id.* at 1255. Instead, the employer believed the plaintiff's doctor was wrong, and that the condition—which indisputably existed—was not "serious" enough to qualify for FMLA leave. *Id.* at 1256. The District Court in *Sims* believed the employer was not allowed to make that determination itself, without seeking a second, and possibly a third, medical opinion under section 2613(c) and (d). *Id.* According to *Sims*, an employer cannot legitimately substitute *its own medical judgment* for that of the employee's doctor.

Unlike the employer in *Sims*, here, Barrick did not seek to unilaterally impose its own medical opinion in lieu of Dr. Black's. Instead, Barrick simply exercised its right not to reinstate an employee, Perez, who obtained leave fraudulently, or to pursue outside employment that clearly violated company policy. 2-SER-306-307; *see* 29 C.F.R. § 825.216(d)-(e). The Department of Labor addressed the distinction—between fraudulent or otherwise improper leave, and the right to a medical re-certification—in Opinion Letter 16, published November 15, 1993. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FMLA - 16 (Nov. 15, 1993). The DOL responded to the writer's concern about the FMLA's potential for employee abuse:

> "You observe the regulations contain no provisions for dealing with employees who fraudulently obtain leave under the FMLA. <u>You suggest the requirement for medical certification is ineffective in addressing employee abuse due to the minimal information required</u>

48

in the certification, particularly with regard to the care of an immediate family member with a serious health condition.

"Contrary to your observations, the regulations do provide remedies for employers with regard to employees who fraudulently obtain FMLA leave. In [29 C.F.R. § 825.216(d)] the regulations state 'An employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions.'"

*Id.* (emphasis added). In contrast, the DOL observed, "[t]he medical certification requirements of the regulations are intended to provide the employer with medical evidence of the existence of a serious health condition for either the employee or an immediate family member." *Id.* The DOL further clarified that the regulations also address employee abuse arising from "working on another job while on leave," which precludes an employee's right to reinstatement under 29 C.F.R. section 825.216. *Id.*

Perez's argument improperly assumes section 2613 requires medical recertification in *every* instance before denying reinstatement under the FMLA. This theory is undermined by the statute itself, its interpreting regulations, and the case law. *Cf. Lewis v. U.S.*, 641 F.3d 1174, 1178 (9th Cir. 2011) (rejecting employee's argument that "disputes as to the adequacy of an employee's medical certification can be resolved only by the employer's requiring the employee to submit second and even third opinions," and distinguishing an employer's doubts as to the "sufficiency" of a certification from doubts about its "validity");

49

*Marchisheck v. San Mateo Cty.*, 199 F.3d 1068, 1076-78 (9th Cir. 1999) (holding an employer's failure to request re-certification does not preclude challenge to existence of a "serious health condition" where the employee's initial certification was insufficient).[15]

The jury properly concluded Perez did not have a serious health condition that would entitle him to the protections of the FMLA. Even if the jury had not made that determination, ample evidence in the record supports the verdict on other grounds, as Perez obtained leave to perform outside business activities in a manner that was both fraudulent and in violation of Barrick's policies. The jury was best positioned to weigh the credibility of the witnesses at trial and to credit Barrick's evidence of Perez's fraud. The jury correctly applied the law to the evidence in this case in finding Perez's termination did not violate any of his rights under federal or state law.

## B. The District Court Properly Refused To Instruct On Requirements Imposed By State Statutes That Do Not Apply To This Case.

Perez also argues that the District Court erroneously refused to instruct the jury on the requirements imposed by Nevada's workers' compensation code and the Spotters statute, none of which apply to this case. Perez asks that this Court

---

[15] For the foregoing reasons, the District Court also properly refused Perez's proposed instruction regarding an employer's right to seek a re-certification or a second or third medical opinion. ER_073-074.

reverse the jury's verdict and order a new trial to address these instructional errors. As discussed *supra*, Perez waived his right to request a new trial by failing to move for any post-trial relief in the Court below. However, Perez's arguments about purported instructional errors with regard to workers' compensation law and the Spotters statute also fail on the merits. The District Court properly declined Perez's proposed instructions regarding various legal standards and requirements under state laws that are not at issue in this action and not germane to the issues within the jury's purview. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1076 (9th Cir. 2020) ("[Plaintiff] is not entitled to an instruction based on a legal theory that was not presented to the jury."); *Roberts v. Spalding*, 783 F.3d 867, 873 (9th Cir. 1986) ("[T]he district court was under no duty to submit to the jury proposed instructions that contain . . . a theory not supported by the evidence.").

Most critically, none of Perez's purported instructional errors could have even *plausibly* changed the outcome of this case. The jury properly determined Perez was not even injured to begin with, and, having received considerable evidence that Perez had engaged in fraudulent conduct to pursue other business interests, believed him not credible. Despite this, and though he failed to move for such relief below, Perez asks this Court to order a new trial—based on jury instructions concerning totally irrelevant legal standards. The Court should reject Perez's misguided effort.

**1.** **The Court Properly Refused To Instruct That, Under NRS § 616C.140(1), An Employer May Require Periodic Medical Examinations Of An Employee Receiving Workers' Compensation Benefits.**

The District Court properly declined Perez's proposed jury instruction regarding an employer's right to require that an employee with a workers' compensation claim "submit to a medical examination at a time and from time to time at a place reasonably convenient for the employee."  ER_039; ER_078-079. An employer's right to seek medical re-certifications of an employee seeking workers' compensation benefits had no bearing on the issues before the jury. Barrick never exercised such a right in this case.  More importantly, this case did not concern a claim or denial of coverage for workers' compensation insurance benefits.  Instead, the jury was merely asked to decide whether Barrick fired Perez in retaliation for filing a workers' compensation claim.  *See* State Bar of Nevada, Publications Committee, *Nevada Jury Instructions: Civil*, at Instruction 16.4 (2018 Ed.) (noting the elements for a wrongful retaliatory discharge claim include: protected conduct, such as filing a workers' compensation claim; the employer's knowledge of the protected conduct; and the employer's decision to discharge the employee as a proximate result of the protected conduct and in derogation of Nevada's public policy).  Instructing the jury on an employer's right to require periodic examinations of an employee seeking insurance benefits would likely generate confusion, as the proposed instruction has no relevance to this case.  The

District Court properly declined to instruct on section 616C.140 of the workers'
compensation code.

> **2.** **The Court Properly Refused To Instruct That Employees
> Seeking Workers' Compensation Benefits Must Report
> Covered Injuries Within Seven Days Under NRS §
> 616C.015(1).**

Perez asked the District Court to instruct the jury regarding NRS section
616C.015(1), a provision from Nevada's workers' compensation code. ER_043.
Perez requested the following instruction:

> An employee shall provide written notice of an injury that arose out of
> and in the course of employment to the employer of the employee as
> soon as practicable, but within 7 days after the accident.

ER_043.

This proposed instruction is substantially identical to NRS section
616C.015(1). At the charge conference, Perez's counsel argued this instruction
was appropriate because the requirement, under Nevada's workers' compensation
code, to report injuries "as soon as practicable, but within 7 days after the
accident" actually "supplants Barrick's requirement that injuries be reported
immediately." ER_078:16-ER_079:3. Perez argued Barrick's policy requiring
that injuries be reported immediately was "void as a matter of law" under NRS §
616C.015(1). ER_079:2-3.

But this case does not involve a claim that Perez was entitled to workers'
compensation benefits to which he was denied because he failed to report the

injury "as soon as practicable, but within 7 days after the accident." NRS § 616C.015(1). In fact, this case does not involve a claim for denial of workers' compensation benefits at all. Instead, in his common law wrongful discharge claim, Perez alleged Barrick unlawfully terminated his employment in retaliation for filing a workers' compensation claim. 2-SER-393-395; 2-SER-397-398. NRS section 616C.015 does not provide grounds for a common law wrongful discharge claim—and nor did Perez argue as much in his Complaint or at any other time before the District Court. 2-SER-393-395; 2-SER-397-398. Section 616C.015(1) simply provides a requirement that employees report industrial injuries "as soon as practicable, but within 7 days" in order to seek insurance coverage. NRS § 616C.015(1). Barrick did not require employees to report injuries sooner in order to receive *insurance coverage*; it required immediate reporting due to mine safety protocols, in consideration for the inherently dangerous occupation of gold mining below the earth.

### 3. The Court Properly Refused To Instruct That Employment Contracts Which Frustrate The Goals Of The Workers' Compensation Code Are Void Under NRS § 616B.609(1)(b).

Perez also requested the following instruction on another provision of the workers' compensation code, NRS section 616B.609(1)(b):

> A contract of employment, or any other device, having for its purpose the waiver or modification of the terms or liability created by chapters 616A to 616D, inclusive, of NRS (Nevada's workers' compensation statutes) is void.

54

ER_044.

At the charge conference, Perez argued this instruction was proper to support his theory that Barrick's policy requiring immediate reporting of industrial injuries was void as a matter of law, because NRS § 616C.015(1) requires that injuries be reported "as soon as practicable, but within 7 days." ER_079:22-ER_080:5. Barrick's immediate reporting policy does not waive any employees' rights to workers' compensation benefits. Barrick's policy requires immediate reporting of mining incidents or injuries. 2-SER-323-331. Again, Barrick does not have a policy of denying *insurance coverage* to employees who do not immediately report an industrial injury. The District Court properly excluded this proposed instruction.

### 4. The Court Properly Refused To Instruct On The Definitions Of "Accident" And "Injury" For A Workers' Compensation Claim Under NRS §§ 616A.030, 616A.265(1).

Perez asked the District Court to instruct the jury on the statutory definitions of an "accident" and an "injury" under Nevada's workers' compensation code. ER_080:9-11. In excluding these proposed instructions, the District Court explained:

> "My inclination is to exclude these. The question here is whether the injury actually occurred. The jury could well find that the injury – the evidence is equivocal on that issue. You know, they claim that he was lying from the outset and for a reason. You claim that they're lying and for reasons set forth.

. . .

"And the question is straightforward to the jury, and you may so argue, we believe an injury occurred. Can you contradict that by looking at the doctor's statement? You should hold that we have proven that there was an injury and that it was more than three days. You know, you can say that the treatment was longer than three days. So I don't see the need for these – I do see the need for defining – what's the term?

. . .

"Serious health condition, yeah."

ER_080:12-ER_081:3.

The Court properly considered the relevant inquiry before the jury in ruling on these proposed instructions: Was there a "serious health condition"—i.e., did the injury occur? ER_080:12-ER_081:3. The only other relevant question before the jury was whether Perez was fired in retaliation for bringing a workers' compensation claim. The validity of the workers' compensation claim itself—meaning whether the alleged incident could qualify as an "accident" or an "injury" for purposes of a workers' compensation claim—was not before the jury in this case. These instructions were properly excluded.

Moreover, there is no reasonable possibility that the Court's decision to exclude these instructions could have changed the result in this case. The verdict demonstrates the jury did not believe that Perez had a serious health condition; it also did not believe that Barrick had fired Perez because he filed a workers'

compensation claim. The compensability of the incident under Nevada's workers' compensation code was hardly likely to have an impact in a case where the jury believed that Perez did not suffer any injury.

### 5. The Court Properly Refused To Instruct On The Requirements For Utilizing The Report Of A "Spotter" Under NRS § 613.160.

Perez argues the District Court erred by refusing to instruct on the requirements for utilizing a "spotter" to investigate Perez's fraud. Perez argues Barrick failed to comply with the Spotters statute's requirement to provide an employee with notice of the results of a private investigator's surveillance—and to provide an opportunity for a hearing upon an employee's request. Opening Brief at 37-38.

The Spotters statute is not relevant to this case because it specifically excludes any private right of action. NRS § 613.160(1). Perez did not bring a claim under NRS section 613.160(1) because *the statute does not allow him to do so*. *Id.*; *see* 2-SER-392-399. Even if Barrick had violated the statute, this fact could not support Perez's claims under the FMLA or for common law wrongful discharge. *Nunez v. Sahara Nevada Corp.*, 677 F. Supp. 1471, 1477 (D. Nev. 1988) (rejecting employee's argument that alleged violation of NRS § 613.160 can support a common law discharge claim). Indeed, "the sole remedy for breach of § 613.160 is to be an action by the State," and "there is no *implied* private cause of

action in NRS § 613.160." *Id.* (emphasis added). Nevada recognizes only a very limited common law wrongful discharge claim, *see O'Brien*, 748 Fed. Appx. at 724, and violation of NRS section 613.160 does not provide grounds for such a claim, *Nunez*, 677 F. Supp. at 1477.

In any event, this instruction would not have changed the result. Barrick provided Perez with notice of the surveillance evidence, and specifically asked Perez to provide a response, which he declined to do. Despite receiving proper notice, Perez did not request a hearing under NRS section 613.160(1). Barrick did not violate the Spotters statute, but the District Court was correct in declining to instruct on this irrelevant provision that was not at issue in the case.

### C. There Was No Error In Refusing To Instruct That Barrick's "Good Faith" Or "Lack Of Knowledge" Would Not Negate Its Liability For FMLA Interference.

Perez asked the District Court to instruct the jury that, if the jury found Barrick interfered with Perez's rights under the FMLA, it could not disregard that finding due to Barrick's "good faith intentions or lack of knowledge that its conduct violate[d] the FMLA." ER_035. Plaintiff proposed the following instruction, entitled "Liability Not Negated By Good Faith or Lack of Knowledge":

> A violation of the FMLA occurs when the employer fails to provide an employee with any of his or her entitlements under the Act. There need not be any intent to discriminate and an employer's good faith intentions or lack of knowledge that its conduct violates the

58

FMLA does not protect the employer from liability for its failure to provide an entitlement under the Act. Restoration, or reinstatement to the employee's job, or an equivalent job without loss of benefits or seniority after a leave of absence is something an employee is entitled to under the FMLA.

ER_035.

The District Court similarly rejected Barrick's proposed instruction on the *existence* of any good-faith defense. 2-SER-288-289; 2-SER-206-207. In other words, the Court declined to include an instruction *negating* an affirmative defense that the Court had already ruled that Barrick could not rely on in the case. This decision cannot plausibly constitute error or prejudicial error. The Court was not required to instruct the jury on every conceivable factor it should *not* consider in reaching its verdict. Here, the Court took this affirmative defense off the table entirely, avoiding any confusion or error.

## X.    **CONCLUSION**

Perez's arguments on appeal are not properly before this Court. Perez waived his right to request judgment as a matter of law, to challenge the sufficiency of the verdict, or to seek a new trial by failing to seek relief in the Court below. This alone is fatal to Perez's appeal.

Moreover, the record at trial contains overwhelming support for the jury's determination that Perez did not have a "serious health condition" and was fired for fraudulently obtaining leave to pursue outside business ventures. Barrick

confronted Perez with the evidence of fraud during his employment, and Perez did not deny it. He likewise failed to deny it during the trial itself. The verdict demonstrates that, understandably, the jury did not find Perez to be credible.

Looking to the instructions as a whole, the jury was correctly instructed on the substance of the applicable law, and Perez has failed to show any instructional error that more likely than not caused the jury to reach a different verdict.

The jury's verdict reflects a correct application of the law to the evidence that was presented at the trial of this case. The verdict must be affirmed.

DATED: December 15, 2023      Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: _____
Jack S. Sholkoff
David C. Castleberry
Amanda L. Fuller
Catherine L. Brackett

Attorneys for Defendant-Appellee
BARRICK GOLDSTRIKE MINES, INC.

## CERTIFICATE OF COMPLIANCE

I hereby certify as follows:

1.     This brief complies with the type-volume limitations in Circuit Rule 32-1 because it contains 13,205 words, excluding the parts exempted by Fed. R. App. 32(f).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6).  It has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Respectfully submitted,

DATED:  December 15, 2023          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  _____
Jack S. Sholkoff
David C. Castleberry
Amanda L. Fuller
Catherine L. Brackett

Attorneys for Defendant-Appellee
BARRICK GOLDSTRIKE MINES, INC.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1.      All required privacy redactions have been made per Rule 25 of the Federal Rules of Appellate Procedure and Rule 5.2 of the Federal Rules of Civil Procedure;

2.      If required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3.      The digital submissions have been scanned for viruses with the most recent version of Kofax Power PDF on December 15, 2023, and this submission is free of viruses.

Respectfully submitted,

DATED:  December 15, 2023          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:     _____
          Jack S. Sholkoff
          David C. Castleberry
          Amanda L. Fuller
          Catherine L. Brackett

          Attorneys for Defendant-Appellee
          BARRICK GOLDSTRIKE MINES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of December, 2023, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

James P. Kemp
Kemp & Kemp, Attorneys at Law
7435 W. Azure Drive, Suite 110
Las Vegas, NV 89130
jp@kemp-attorneys.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-15043

I am the attorney or self-represented party.

**This brief contains** 13,205 **words,** including 48 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Jack S. Sholkoff  **Date** 12/15/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*