CASE NO. 23-15043

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

TOMAS PEREZ, Plaintiff-Appellant

v.

BARRICK GOLDSTRIKE MINES, INC., Defendant-Appellees

---

On Appeal from the United States District Court for the District of Nevada
Case No. 3:19-cv-00067-RCJ-CSD Honorable Robert C. Jones

**APPELLANT'S REPLY BRIEF**

James P. Kemp, Esq.
Nevada Bar No. 6375
KEMP & KEMP
7435 West Azure Drive, Suite110
Las Vegas, NV 89130
(702) 258-1183
Attorney for Appellant

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...…………………...………………………………......iii

REPLY ARGUMENT……………………………………………………………. 1

   **I.** **THIS CASE IS ABOUT LEGAL ERRORS, INCLUDING WHAT IS REQUIRED FOR AN EMPLOYER TO PROPERLY CHALLENGE AN FMLA CERTIFICATION ….**………………………………….10

  **II.** **THIS CASE IS ABOUT LEGAL ERRORS IN NOT GIVING PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**………...16

 **III.** **THIS CASE IS NOT ABOUT THE "SUFFICIENCY OF THE EVIDENCE, THUS APPELLEE'S ARGUMENTS AS TO WAIVER ARE MISPLACED**……………………………………...…….21

CONCLUSION……………………………………………………….. 23

CERTIFICATE OF COMPLIANCE…………………………………… 24

CERTIFICATE OF SERVICE………………………………………….. 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Intern. Vacations v. MacBride*, 661 P.2d 1301, 1303, 99 Nev. 324 (1983)................................................................................................18

*Bachelder v. Am. W. Airlines, Inc*., 259 F.3d 1112, 1130 fn. 19 (9th Cir. 2001) ....16

*Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) .................................................17

*Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1469 (9th Cir. 1997) ................................................................................................17

*Hilao v. Estate of Marcos*, 103 F.3d 789, 793 (9th Cir. 1996) ...............................17

*Hoard v. Hartman,* 904 F.3d 780, 791 (9th Cir. 2018)............................................17

*Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) ................17

*Jones v. Williams*, 297 F.3d 930, 934–35 (9th Cir. 2002) ......................................16

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1051–52 (9th Cir. 1998) ...............................................................................16

*Sanders v. City of Newport,* 657 F.3d 772, 782-83 (9th Cir. 2011).........................17

*Schermitzler v. Swanson,* 2021 WL 2915029, at *5-7 (E.D. Wis. July 12, 2021) ..11

*Sims v. Alameda-Contra Costa Transit Dist.,* 2 F. Supp. 2d 1253, 1260 (N.D. Cal. 1998) ......................................................................................10

*Spencer v. Peters*, 857 F.3d 789, 797 (9th Cir. 2017) ............................................16

*Tekoh v. County of Los Angeles*, 985 F.3d 713, 718 (9th Cir. 2021) ......................16

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006)...............................................................21

**Statutes**

NRS 613.160................................................................................... 2, 12, 14

NRS 616B.609 ........................................................................................18

NRS 616C.015 ........................................................................................18

**Other Authorities**

Flexeril: 7 things you should know - Drugs.com.......................................................7

Muscle Spasms (Muscle Cramps): Causes, Treatment & Prevention (clevelandclinic.org)        2

## <u>REPLY ARGUMENT</u>

While Appellant Tomas Perez's Appeal is about legal principles including what the Family and Medical Leave Act should require and whether or not certain jury instructions that he requested were improperly not given to the jury, the Defendant-Appellee, perhaps in an attempt to confuse and obfuscate these issues, attempts reframe the issue as being about "sufficiency of the evidence." This is a strawman argument that Defendant sets up for the sole purpose of knocking it down while avoiding the real legal issues and errors in this case that should require reversal and remand for a new trial. Let's start by just addressing the fact issues raised to put them to rest before argument about the real and substantial legal issues in the case.

Appellee is "hammering the facts." But it has the facts completely twisted and distorted. This is important only because the legal errors involved in the case with respect to jury instructions are impacted by the misleading factual premises set forth by the Appellee. The major premise of the argument is that Tomas Perez committed "fraud" in obtaining FMLA leave. Let alone that there is zero proof that Tomas ever asked to be taken off work in the first place and that was Dr. Black's decision (ER 161-165), and let alone that Dr. Black (who does not appear to have any bias in favor of Tomas) diagnosed Tomas with muscle spasms that are undisputedly involuntary as a matter of biological science:

1

> Muscle spasms (also called muscle cramps) occur when your muscle involuntarily and forcibly contracts uncontrollably and can't relax. Muscle spasms are normal and quite common. They can involve part or all of a muscle or several muscles in a group. You can get muscle spasms anywhere in your body.

Muscle Spasms (Muscle Cramps): Causes, Treatment & Prevention (clevelandclinic.org)

Appellees continue to beat the drum. They point to *sub rosa* video surveillance that they acquired by having their detective (a "spotter" under NRS 613.160) follow Tomas around with a video camera for several days. It should be noted that everyone's routine daily activities look somehow suspicious when someone has gone to the trouble of putting a person under video surveillance. Such is the case here, because when one really looks at what Tomas was doing and compares it with his doctor's actual restrictions and what his regular job duties required, it is evident just how insubstantial the Defendant/Appellee's evidence was and is.

The legal error in this case with respect to the evidence, as discussed herein, is the failure to give proper jury instructions as to what the law is surrounding FMLA leave certification disputes and Nevada workers' compensation laws that related to Tomas's injury. This is not about "sufficiency of the evidence" it is about the legally incorrect removal and concealing from the jury of the law that gives context to the evidence and facts and shines light on motives and credibility of Defendant/Appellee. In this case the failure to provide the jury with the law regarding certification and medical exams permitted the Defendant/Appellee to leave a misleading impression on the jury. Defendant/Appellee continues to try to

paint itself as a victim of Tomas Perez when all Tomas ever did was experience symptoms of his chest wall crashing into the armrest of the truck he was driving at work, report those symptoms and the instance of the truck contacting the wall (a VERY COMMON occurrence in the underground mine), and go to the doctor. It was the doctor's decision to take him off work. There is no evidence of any kind of "fraud" which would be something like if Tomas bribed the doctor to give him an off-work slip. There simply is not anything like that. Tomas was suffering from muscle spasms and was given muscle relaxers that would cause a safety hazard if he were to operate heavy equipment like the haul truck that he drove at work while on that prescription medication. He had to be placed off work by the doctor and THE DOCTOR DID THIS, NOT TOMAS!

The legal error is also in permitting a jury to make a finding that is wholly incompatible with medical science which is likewise impacted and influenced by the lack of context that the jury would receive by being properly instructed as to the law regarding FMLA certification and recertification, as well as opportunities that employers have to ferret out any "fraudulent injuries" through independent medical exams under NRS 616C.140. Rather than go through the steps and the avenues that Congress and the Nevada Legislature have put in place to act as a fair protocol for what employers consider to be suspicious activity regarding FMLA or time off work for a serious health condition or for a workplace injury, the

3

Defendant/Appellee rushed to judgment and took only enough steps to confirm their bias and not really get to the truth. This was done, in large part, due to Defendant/Appellee's hostility toward workers' compensation claims that can be discerned by their unethical "safety bonus" program that discourages and chills the reporting of workplace injuries and filing workers' compensation claims through providing financial incentives and peer pressure to avoid reporting and filing, and also the alleged policy to report "immediately" any accident or injury when such things are not always clear as in this case where the symptoms manifested themselves about two hours after the haul truck contacted the "rib" (wall) of the mine.

So the Appellee had a "spotter" detective follow Tomas around and videotape the mundane activities of his life while he was off work on Dr. Black's orders. When looking at the evidence of the videos and reading Appellee's spin on the topic it is important to remember exactly what the truth and the facts are. First, Tomas was not given ANY SPECIFIC PHYSICAL LIMITATIONS by Dr. Black, he was merely told to be off work from his regular duties of being a haul truck driver in the underground mine 12 hours per day. (ER 161-165, 167-170 Medical Reports; 219-224 Testimony of Dr. Black) This was because he was on muscle relaxers that would make it unsafe to drive a haul truck and Dr. Black did not think the working conditions such as bouncing around in the truck would be conducive

to his healing. (Id.). So tracking Tomas's videorecorded activities as chronicled in Answering Brief pp. 12-18, the following is a chart of what Tomas did and whether or not it constituted haul truck driving that he was ordered by the doctor not to do, or if it in any way violated the doctor's orders:

| ACTIVITY BY MR. PEREZ DEPICTED IN SCREEN SHOTS OF VIDEO FOOTAGE PRINTED IN APPELLEE'S BRIEF | IS THIS DRIVING A LARGE DUMP TRUCK[1] UNDERGROUND 12 HOURS PER DAY? | | DOES THIS ACTIVITY VIOLATE DR. BLACK'S RESTRICTIONS?[2] | |
|---|---|---|---|---|
| | YES | NO | YES | NO |
| Driving pickup through town completing errands | | X | | X |
| Obtaining meal from food truck with left hand | | X | | X |
| Walking briskly and getting into his pickup truck | | X | | X |
| Leisurely talking on the phone | | X | | X |
| Arriving at casino walking briskly in parking lot | | X | | X |
| Throwing away his meal with left arm in garbage | | X | | X |
| Entering casino and gambling for 45 minutes | | X | | X |
| Sitting at table while gambling for 45 minutes | | X | | X |
| Visiting casino two days later for over an hour | | X | | X |
| While at casino sitting and standing w/o difficulty | | X | | X |
| Performing handyman repairs on mobile home | | X | | X |
| Lifting and holding arms above head | | X | | X |
| Using a power drill and other tools | | X | | X |
| Bending over to pick up debris and discarding it | | X | | X |
| Visiting casino again and gambling a few hours | | X | | X |
| At casino sitting at slot machines having beverage | | X | | X |
| Using his left arm while doing handyman repairs | | X | | X |
| Kneeling and operating tool while doing repairs | | X | | X |
| Hanging drapes reaching and operating tools | | X | | X |
| Carrying tools through house extending arms | | X | | X |

Answering Brief pp. 12-18

In terms of the video surveillance itself, Tomas did not violate any restrictions imposed on him by Dr. Black. (ER 161-165, 167-170) Further he only worked on the mobile home on November 9, 2017 for a period of less than two

---

[1] A "haul truck" is just a big dump truck. See photos at ER 177-193.
[2] ER 161-165, 167-170

hours total. (SER Nov 9 video) The portion where he can be seen working outside starts at 1:35 p.m. and ends at 1:44 p.m. (nine minutes) and the portion where he is using a power drill is less than two minutes from 1:37 p.m. to 1:39 p.m. (Id.)This was at the beginning of his seven days off because his night shift beginning the night of November 9, 2017 would have counted as November 10 and that was the beginning of his "Super 7" days off in a row. (ER 168 noting work schedule) Thus, this activity was on his day off and did not violate any doctor's restrictions. (Id.) Moreover, Tomas had been on the muscle relaxers for three days by this point (ER 170), was feeling better, and thought it would be appropriate to increase his movement and get some exercise. The work was not heavy labor at all (SER Videos) and again, he considered it good exercise to stretch out a little bit. This activity, on his day off, did not violate any doctor's orders. (ER 161-165, 167-170)

As to the other videos showing him going to a casino and relaxing and playing, going to the market his family owns, and going to various other places do not violate his doctor's restrictions and as to driving his vehicle, he had acclimated to the muscle relaxers which he started taking on November 6, 2017 by this time and the warning label on the medication, noted above, only restricted driving until he was comfortable with the effects of the medicine. Driving a large 26-ton haul truck, on 12-hour long shifts, underground in narrow tunnels where the clearance result in frequent hits and scrapes on the walls (SER Videos; ER 177-193) would

6

not be safe on these muscle relaxers and Mr. Perez would be unable to work his regular job duties while on the muscle relaxers. (ER 161-165, 167-170 Medical Reports; 219-224 Testimony of Dr. Black)  So, it was completely Dr. Black's decision to keep Tomas out of work.  He did so based on his diagnosis of the objective findings of muscle spasms and placing Tomas on the muscle relaxer cyclobenzaprine (Flexeril) (ER 170).  This muscle relaxer is known to cause drowsiness and other side effects that make operating heavy machinery such as a haul truck contraindicated:

- Flexeril is likely to make you sleepy or impair your judgment time. This may be beneficial in aiding sleep; however, you should avoid operating machinery, driving, or performing tasks that require mental alertness while taking this medicine.

Flexeril: 7 things you should know - Drugs.com

Tomas Perez was NEVER confronted with the evidence against him.  It is disputed as to whether or not he was ever even told about videos, what they depicted, what the "spotter's" written report said, or anything else about the matter. But is undisputed that he was not permitted to view the video and explain what it depicted, he was not permitted to read or review the written report of the "spotter" detective, and he was not informed of the identity of the "spotter" detective or given a chance to have a hearing and confront that person prior to being disciplined/fired for what the "spotter" reported to the Appellee.

Appellee repeats the word "fraud" ad nauseum in its Answering Brief. Simply stated, there was no misrepresentation or fraud because of the objective medical findings of Dr. Black that there were involuntary muscle spasms present on Tomas and he prescribed medications that foreclosed Tomas driving a 26-ton haul truck underground in a mine for 12 hours per day. It is without dispute that Tomas was taken off of work by Dr. Black from November 1, 2017 through November 19, 2017. (ER 161-165, 167-170) There simply cannot be fraud on the indisputable facts of this case. Tomas made no misrepresentations to obtain medical certification. The jury was not asked to make any finding of "fraud" and did not do so. Tomas was not a "faker" and the jury did not find that he was; those words "fraud" and "faker" are nowhere in what the jury found and the verdict from did not get to that level of specificity to know for sure exactly what the jury thought.

It should also be noted that Tomas is prejudiced by the Appellee's failure to follow the statutory and regulatory FMLA certification challenge protocol. Tomas very well may have been exonerated by a second opinion or third opinion doctor. Appellee's failure to follow the protocol robbed Tomas of the opportunity to get corroboration of his condition. Appellee's motives were obviously to make a termination stick and not afford Tomas the opportunity to demonstrate a lack of so-called "fraud." This is an important point. The certification challenge protocol of

recertification or second and third opinions is designed as much or more to protect injured workers like Tomas as it is to provide a way for employers to ferret out unmeritorious FMLA leave requests.

Further, on the issue of potentially requesting recertification from Dr. Black, it is noted that the Appellee did not even bother to show the surveillance report or the video to Dr. Black. Appellant surmises that this was again to avoid any wrinkles in Appellee's termination narrative of Tomas being a "fraud." The videos, as noted above, do not show Tomas violating any of Dr. Black's restrictions which was merely to not work driving underground haul trucks in a mine 12 hours a day. (ER 161-165, 167-170 Medical Reports; 219-224 Testimony of Dr. Black) Dr. Black may have actually been okay with the short physical activity by Tomas as he was healing from his injury. Dr. Black was not shown the video so it can never be known.

Another thing, Appellee at page 45 and footnote 14 of the Answering Brief makes mention of a "Standard of Conduct that forbids "permitting outside activities to interfere with work" Tomas simply never did that. The times he was working on his rental properties on November 9, 2017 was actually on his day off (ER 168 showing his last day of work before 7 days off was 11/9/2017, but he worked overnights so he would have gotten off on 11/9/2017 at 7:00 a.m.-thus by the time of day he was videorecorded at his rental property doing chores it was

during his 7 day off period according to his schedule). Further, Appellees more specific FMLA policy states that Tomas is not precluded from working at other jobs so long as he was doing that job prior to going out on FMLA leave:

> An employee who is on an approved leave of absence may not perform work for any other employer during that leave, unless the employee was already working for the other employer at the time the employee began his or her leave.

(ER 159)

At page 48 of the Answering Brief the Appellee brings up for the first time on appeal an opinion letter from the U.S. Department of Labor. That letter is completely distinguishable as it was speaking about abuse of FMLA where the leave was to care for an immediate family member, not where the leave and the medical certification was for an employee's own serious health condition. Caring for a family member is a completely different animal. Fraud can be a bigger concern there than where, as here, the employee's own serious health condition and the medication he is on precludes his working as a haul truck driver in an underground mine for 12 hours a day.

## I. THIS CASE IS ABOUT LEGAL ERRORS, INCLUDING WHAT IS REQUIRED FOR AN EMPLOYER TO PROPERLY CHALLENGE AN FMLA CERTIFICATION .

Largely, Appellant relies on the arguments set forth in the Opening Brief. In particular, the reasoning of *Sims v. Alameda-Contra Costa Transit Dist.,* 2 F. Supp. 2d 1253, 1260 (N.D. Cal. 1998) is logical and persuasive. Likewise the more

recent case of *Schermitzler v. Swanson,* 2021 WL 2915029, at *5-7 (E.D. Wis. July 12, 2021) follows and adopts the reasoning of *Sims* and is persuasive in its conclusion that

> The statutory scheme of the FMLA evinces an intent to ensure employees of a swift and expeditious determination of whether they are entitled to leave when their own physician confirms that they are unable to work. To hold that the procedure outlined in § 2613 is not exclusive would transform the question of whether an employee was entitled to FMLA from a simple medical question, 15 presumptively decided by the employee's doctor, into a question for a court or jury to decide, assisted by paid expert witnesses, but only after a lengthy and expensive discovery process during which the employee's entire employment and medical history would be disclosed to attorneys for the employer. This is not what Congress had in mind in enacting the FMLA, and it is not what the FMLA requires. The FMLA makes the complete and sufficient certification by the employee's own physician final unless the employer pays two other independent physicians to examine the employee and they both disagree with the employee's treating physician.

It is true that some other courts around the country have not followed *Sims* and have simply found that an employer has the options of seeking second opinions and recertifications but is not required to do so. This is shallow and fails to account for the absurdity that a self-interested employer is permitted to substitute its own judgment for that of a medical doctor and thereby overrule the doctor on a question of medical fact finding. *Schermitzler* gets it rights where it says, "it is clear from the language of the FMLA that it is "designed to have medical determinations made by health care providers, rather than courts," Sims, 2 F. Supp. 2d at 1261–62, or juries."

This case presents an issue of first impression to this court and it is a pure issue of law. This case illustrates the problem vividly. Appellee is not fond of workers' compensation claims and has policies and takes harsh action against persons like Tomas Perez when they get hurt on the job and/or file a workers' compensation claim. This Employer has its workers' compensation administrator/agent hire a detective to follow Mr. Perez around and videotape him doing certain mundane daily activities, NONE OF WHICH violate his doctor's restrictions, and then uses this dubious evidence to fire Mr. Perez without ever asking the doctor to opine on the video, without ever showing the video to Mr. Perez, without letting him review the "investigative report," and without giving Mr. Perez the opportunity to confront the "spotter" detective as required by NRS 613.160. This was done with the sole intention of firing Tomas as that was the only interest the Appellee had. An employer should not be able to challenge the medical certification of a doctor in court without having followed the protocol set forth in the FMLA.

The FMLA is a hollow vessel of worker protections if an employer can simply obtain misleading video, or exaggerate and take what an employee is doing in his off time out of context, and fire and refuse to reinstate that employee after an approved FMLA leave of absence without ever seeking recertification, showing the doctor the video or other evidence, without seeking a second opinion, and without

getting the employee's side of the story. The *Sims* and *Schermitzler* cases have it right. It is absurd to conclude that Congress passed statutes and the U.S. Department of Labor enacted regulations setting up this whole protocol for employers to test or challenge the *bona fides* of the medical certification given by a doctor and then simply allow that employer to sidestep the protocol and rely on its own biased and unqualified view of what it THINKS an employee is capable of and based on that conclude that the employee is a fraud and fire him/her, pushing the employee into a litigation process without having followed the statutory and regulatory protocol for challenging a medical certification by a doctor. But that is exactly what happened here. The evidence shows that Tomas did NOTHING to violate any restrictions by Dr. Black because the only restriction was that he was not to drive haul trucks in an underground mine on 12-hour shifts. (ER 161-165, 167-170 Medical Reports; 219-224 Testimony of Dr. Black) Tomas undisputedly was not driving haul trucks between November 1, 2017 and November 20, 2017 while he was on FMLA leave.

The evidence in this case was disputed over whether or not the Human Resources and management of Appellees ever actually confronted Mr. Perez and to what extent. It is undisputed that it DID NOT SHOW HIM THE VIDEO, did not provide him with the written report, or identify the "spotter" detective or give Mr. Perez the opportunity to request a hearing to confront the "spotter." In other

words, it is undisputed that the Appellee violated NRS 613.160 and that the termination of Mr. Perez's employment was unlawful under Nevada law.

This case is about what the law should require in order for an Employer to challenge the FMLA Certification by a medical provider, in this case Dr. Black. Defendant-Appellee undisputedly did not follow the protocol set forth in the FMLA statutes and regulations. Is there to be no consequence to that? If so, then it is irrelevant whether or not an employee has the certification and approval of the FMLA leave because the employer may simply disregard it and claim some sort of fraud or gin up some trivial matter as was done here. The doctor's opinion simply does not matter under the FMLA according to Appellee. The objective medical evidence of spasms that cannot be faked because they are involuntary found by the doctor and the undisputed fact that a person on Flexeril should not drive 26-ton haul trucks regardless of any other physical condition take a back seat to an employer's biased opinion and manufactured and untested video recordings of mundane and usual daily activities of the employee out on leave. This is distasteful and the law should not be what the Appellee argues for.

Finally, even if this court were to determine that the lack of following the FMLA statutory and regulatory protocol for challenging a medical certification by a doctor, then it was still error for the District Court to refuse Appellant's proposed instruction that would have informed the jury of the availability of these tools

14

created by Congress and the Department of Labor to assist employers who are suspicious of employees on FMLA leave. If the District Court has given the instruction(s) regarding this then the Appellant could have pointed to those instructions and called the credibility of the Appellee into question. The jury would have been informed that the Appellee had all of these legal tools at its disposal and did not use any of them. The jury could have determined that it was actually discrimination and retaliatory intent on the part of the Appellee where it had not availed itself of lawful tools and instead resorted to biased self-interest. Depriving Appellant of the instructions he requested permitted the Appellee to hide behind its cynical claim of "good faith." This is prejudicial and reversible error because the repeated claims of good faith by the Appellant where it has not followed the protocol for challenging certifications was not properly placed in context so that the jury could be apprised of the legal option that Appellee stepped around to get to its desired outcome of firing Tomas because of its bias. An employer's good faith is no defense to an FMLA claim. This court has expressly stated that good faith is not a defense to liability in an FMLA case:

> That an employer's good-faith mistake as to whether its action violates the law is not a defense to liability is, similarly, commonplace in other areas of employment law. *See, e.g., Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (holding that an employer's actions violating the Age Discrimination in Employment Act were taken in good faith and without knowledge of the violation barred an award of liquidated damages, but had no effect on liability); *Burnup & Sims,* 379 U.S. at

22-23, 85 S.Ct. 171 (employer's good faith is not a defense to liability
for interfering with employees' rights under § 8(a)(1) of the NLRA).
*Bachelder v. Am. W. Airlines, Inc*., 259 F.3d 1112, 1130 fn. 19 (9th Cir. 2001)

## II. <u>THIS CASE IS ABOUT LEGAL ERRORS IN NOT GIVING PLAINTIFF'S PROPOSED JURY INSTRUCTIONS</u>

For the most part Appellant stands on the arguments set forth in the opening brief regarding errors related to not giving requested jury instructions. But a few issues are addressed further here.

Presenting evidence to a jury that a driver was driving a car at 55 mph without informing the jury of the law that limits speed to 15 mph in the school zone in which the driver was operating misleads the jury as to the reasonableness and credibility of the driver who claims to have been operating the car safely and in "good faith." At trial an attorney is not permitted to tell the jury what the law is. Only the judge, through jury instructions he/she gives to the jury, is allowed to tell the jury about the law. The district court's rejection of a proposed jury instruction is generally reviewed for an abuse of discretion. *See Tekoh v. County of Los Angeles*, 985 F.3d 713, 718 (9th Cir. 2021); *Jones v. Williams*, 297 F.3d 930, 934–35 (9th Cir. 2002); *Duran*, 221 F.3d at 1130–31; *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1051–52 (9th Cir. 1998). However, review is de novo whenever the rejection is based on a question of law. *See Spencer v. Peters*, 857 F.3d 789, 797 (9th Cir. 2017) (reviewing de novo whether challenged

16

instruction correctly states the law); *Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011); *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005); *Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1469 (9th Cir. 1997) (noting rejected instruction "goes to the legal requirements of the… claim"); *Hilao v. Estate of Marcos*, 103 F.3d 789, 793 (9th Cir. 1996) (interpreting rejection as jurisdictional). Thus, if the judge improperly refuses to give jury instructions on the law that the jury needs to understand the law regarding the matters on trial, this is prejudicial and reversible error. Harmless error will not result in reversal; however, court usually finds sufficient prejudice to warrant reversal where "it is impossible to determine from the jury's verdict and evidentiary record that the jury would have reached the same result had it been properly instructed." *Hoard v. Hartman,* 904 F.3d 780, 791 (9th Cir. 2018) (quoting *Sanders v. City of Newport,* 657 F.3d 772, 782-83 (9th Cir. 2011)). The jury verdict form in this case makes it impossible to know if the jury would have reached the same result if they had been properly instructed. Appellant contends that they likely would not have made the same decision had they been properly instructed about the protocol for challenging medical certifications under the statutes and regulations of the FMLA.

Defendant/Appellee trumpets its opinion that the jury made a credibility determination that was adverse to Tomas. That may be so. But that is because of

the prejudicial effects of not providing the jury instructions that Appellant asked for which would have shown how the policy regarding "immediate" reporting of work accidents (remember that Tomas did report his injury within about two hours as soon as he became cognizant that it was serious and not just an ordinary "bump.") is incompatible and interferes with the up to seven days to report permitted under NRS 616C.015. Under NRS 616B.609 this is a "device" that Defendant uses to interfere with and deny rights under the Nevada Industrial Insurance Act because it is used to chill workers into not making workers' compensation claims out of fear of being fired in circumstances like that of Tomas where the symptoms of the injury do not fully manifest themselves for some interval of time. *See American Intern. Vacations v. MacBride*, 661 P.2d 1301, 1303, 99 Nev. 324 (1983). ("Although American International argues this requirement was not met because MacBride did not seek medical attention until some time after the incident, we do not believe that the statute requires the instantaneous manifestation of symptoms. It appears that the correct interpretation of the statutory requirement is that the symptoms must manifest themselves within a reasonable time.") Firing Tomas where his symptoms did not fully manifest until about two hours after the haul truck made contact with the wall of the mine is utilizing a policy, "a device," that modifies time limit that an employee has to report the injury to the employer down from seven (7) days to ZERO TIME AT

ALL. The threat of termination if an employee utilizes the time he or she has under the statute (which is at least the opportunity report it as "soon as practicable, but within seven days") is unlawful and incompatible with a Nevada employee's statutory rights.

It was an abuse of discretion or error of law for the District Court to refuse to give Appellant's proposed instructions (ER 34-50). Again, the entirety of this argument is set forth in the Opening Brief regarding all of the proposed instructions that the District Court failed to give. But another one that Appellant emphasizes are the FMLA proposed instructions which can be found at ER 35-38. These four instructions on good faith not being a defense, employer's duties, employer's right to request recertification for FMLA, and employer's right to get second and third opinions present questions of law that the court should review *de novo* and without deference. As also noted elsewhere herein, it is imperative that employees be able to rely on the medical certification obtained from their doctor, usually at an expense to the employee. Only if an employer obtains the second or third opinions or demands recertification of the medical certifications should it be able to challenge the employee's medical certification. At the very least these Instructions (ER 37-38) should have been given as Plaintiff/Appellant requested that they should be. These Instructions (ER 37-38) would inform the jury that the Appellee had a wide variety of tools to be able to challenge the medical

certification and IT DID NOTHING to attempt to follow protocol under the FMLA which likely would have impacted the jury's view on credibility and reasonableness and would have made a difference in this case. As it was, Appellee played itself off as having been justified in ignoring Tomas's certification and denying him his rights under the FMLA solely on Appellee's non-medical conclusion that Tomas was not injured and was committing fraud. Go back to the table above. Tomas did not violate ANY RESTRICTIONS GIVEN BY DR. BLACK, and he was on Flexeril that prevented him from safely operating haul trucks in an underground mine for 12-hour shifts. None of the items catalogued by Appellee and activities depicted on the video recordings constitute any violation of restrictions such that Tomas's certifications could have been successfully challenged. Remember too, that by the time Tomas was being videotaped he had been healing for over a week and the time on the 9th when he was doing chores at this rental property, he has been on Flexeril for several days and would naturally have been feeling better. The failure to give proper instructions was error and it was prejudicial to Tomas because it would have significantly changed the credibility calculus for the jury and credibility was of prime importance in the trial of this case.

The omission to include discussion of any other of the proposed instructions that were not given should not be construed as their being less important. The

Appellant stands behind his arguments in the Opening Brief with regard to all of the proposed instructions that were denied by the District Court and objected to by Appellant's counsel. They were all important.

### III. THIS CASE IS NOT ABOUT THE "SUFFICIENCY OF THE EVIDENCE, THUS APPELLEE'S ARGUMENTS AS TO WAIVER ARE MISPLACED

Defendant/Appellee sets up a straw man argument for it to knock down. It tries to frame Appellant's arguments on appeal as a challenge to the "sufficiency of the evidence" which would be a waived issue due to not filing FRCP Rule 50(a) and Rule 50(b) motions and not challenging the sufficiency of the evidence in post-trial motions. Appellee cites *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006) for this proposition. However, this argument is misplaced.

Appellant is not challenging the sufficiency of the evidence to prove anything in particular; rather the Appellant is making an argument of what must be done as a matter of law by an employer to successfully challenge an FMLA medical certification and defeat an FMLA interference claim. The argument, as set forth in *Sims*, is that the FMLA statutory and regulatory protocol of seeking recertification or second/third opinions must be followed in order to challenge the certification presented by the employee, particularly where, as here, the employer has initially accepted the employee's proffered medical certification and approved

21

FMLA leave.  This is a legal question, not one as to the sufficiency of the evidence in this case particularly, although the evidence in this case was also not such that any rational jury could find that Mr. Perez, with his muscle spasms and being on Flexeril/cyclobenzaprine muscle relaxers was not unable to do his regular job of driving a 26-ton haul truck in an underground mine for 12 hours per day.  The jury verdict in this case is plain error.

Moreover, rather than a "sufficiency of the evidence" argument, the Appellant is pursuing a case about prejudicially harmful failures to instruct the jury that deprived the jury of information about the law related to challenging an employee's medical certification under the FMLA as well as laws regulating workers' compensation under Nevada state law, which was a significant issue in this case where a workers' compensation wrongful discharge action was also tried. See the Opening Brief arguments.

Accordingly the straw man "sufficiency of the evidence" argument by the Appellees is merely a red herring distraction designed to confuse and obfuscate the real issues and the court should dismiss the argument out of hand. This is about jury instructions and what the law should require when challenging an FMLA medical certification.

## **<u>CONCLUSION</u>**

For the reasons set forth above, this court should reverse the judgment and jury verdict in this case and remand this matter to the District Court for further proceedings which likely should include retrying the case.

Date:     March 8, 2024

       /s/ James P. Kemp
James P. Kemp, Esq.
Nev. Bar No. 6375
Kemp & Kemp
7435 W. Azure Drive, Ste. 110
Las Vegas, NV 89130
Attorney for Appellant Thomas
Mooney

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____23-15043_____

      I am the attorney or self-represented party.
      **This brief contains** _____5,819_____ **words,** excluding the items exempted by Fed. R.
App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).
      I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[   ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[   ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-
     2(c)(2), or Cir. R. 29-2(c)(3).

[   ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[   ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
     [   ] it is a joint brief submitted by separately represented parties;
     [   ] a party or parties are filing a single brief in response to multiple briefs; or
     [   ] a party or parties are filing a single brief in response to a longer joint brief.

[   ] complies with the length limit designated by court order dated _____.

[   ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** _____/s/ James P. Kemp_____ **Date** _____March 8, 2024___
*(use "s/[typed name]" to sign electronically-filed documents)*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 8, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: <u>    March 8, 2024    </u>

<u>     /s/ James P. Kemp     </u>
James P. Kemp, Esq.
Nev. Bar No. 6375
Kemp & Kemp
7435 W. Azure Drive, Ste. 110
Las Vegas, NV 89130
Attorney for Appellant